### State v. Lewis
### Case No. 88-CA-91
### Greene County, (2nd)
### Decided February 1, 1990
[Cite as 1 AOA 74]

*Robert K. Hendrix, Assistant Prosecutor, Greene County Courthouse, Third, Floor, Xenia, Ohio 45385 Attorney for Plaintiff-Appellee*

*Don Brezine, 188 West Hebble Avenue, Fairborn, Ohio 45324, Attorney for Defendant-Appellant*

BROGAN, J.

James Lewis was convicted of one count of rape, R.C. 2907.02(A) (2), with a firearm specification. Lewis was sentenced to consecutive terms of imprisonment of seven to twenty-five years on the rape and three years actual incarceration on the firearm specification. This matter is now before the court on Lewis's timely notice of appeal from said conviction. Lewis asserts five assignments of error, claiming that the trial court improperly allowed testimony as to Lewis's alleged prior acts with a third party, failed to issue a limiting instruction in regard to said testimony, and failed to prevent the prejudicial affects of a media event" arranged by the prosecutor involving the complaining witness. For reasons stated more fully below, we reverse and remand for a new trial.

Lewis and the complaining witness, Julie Wilking, lived together for six months prior to the incident in question. It is undisputed that they were lovers, and had a sexual relationship. At approximately 9:00 A.M. on August 16, 1988 Lewis and Wilking left their home in Cedarville, Ohio to drive to the home of Wilking's parents in Cincinnati. Soon after the trip began, however, an argument started which degenerated into a physical confrontation. It is undisputed that during this fight Lewis produced a .38 caliber pistol, with which he hit Wilking over the head causing several bumps and bruises. Wilking also suffered a busted lip, a black eye, and a bruised breast from the altercation, while Lewis sustained a bite wound to his inner thigh. Wilking claimed that Lewis had simply began beating her in an unprovoked rage while he was driving. Lewis alleged that he was merely defending himself after Wilking had inexplicably attacked him and tried to cause their vehicle to run off the road. Neither combatant was indicted in regards to the fight.

After the fight ended, Wilking attempted to exit the vehicle, but was prevented from so doing by Lewis. Lewis and Wilking agreed that they needed to discuss the fight and returned to their home in Cedarville at approximately 10:00 to 10:30 A.M.

Wilking testified that when they entered their home Lewis threw her to the floor and began to kick her before dragging her by her hair into the living room. Then, according to Wilking, Lewis threatened her with his gun and raped her vaginally. Afterwards, Lewis laid down on the floor and went to sleep. Wilking admitted laying next to him while he slept, claiming that she feared he would awake if she

attempted to flee. Wilking alleged that after fifteen minutes Lewis woke up and raped her anally. Wilking then left the house wearing only one shoe and leaving behind her glasses. Police records indicate that Wilking's call was received at 12:35 P.M. and that she complained only of having been beaten. When an officer arrived at the scene, however, she also alleged rape.

Lewis claimed that when they entered the house they talked for nearly an hour, and then had consensual vaginal intercourse. Lewis denied that the gun was in the house at this time. Lewis testified that he and Wilking slept for an hour or more, and upon awakening had consensual anal intercourse. The physician who treated Wilking after the incident testified that she exhibited no signs of trauma to either her vagina or anus.

During the trial the jury heard the testimony of Pamela McCarthy over Lewis's objection. McCarthy testified that she and Lewis were cohabitating lovers four years prior to the incident in question. McCarthy claimed that in June of 1984 Lewis had beaten her force her to perform fellatio, and had anal sex with her against her will. Lewis was not charged with rape on this matter, but was convicted of misdemeanor domestic violence based upon these facts.

The jury found Lewis not guilty of vaginally raping Wilking, but guilty of anally raping her. The jury also found that Lewis had control of a firearm during the act.

In his first assignment of error Lewis asserts that the trial court erred in admitting the testimony of Pamela McCarthy as to prior acts of nonconsensual anal intercourse. We agree.

The General Assembly has chosen to tightly restrict the admissibility of evidence of the prior sexual activity of *both* the complaining witness and the defendant in rape cases.

> Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and evidence and only to the extent that the court finds that the

evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value. R.C. 2907.02(D).

Thus, contrary to the State's contention, the general rule of evidence regarding the admissibility of "other facts" testimony under Evid. R. 404(B) is *not* applicable to rape cases. Such evidence is only admissible if it falls into one of the categories mentioned above. In the instant case, there is no allegation that Wilking became pregnant or contracted a disease. Since Lewis admitted intercourse, there is no question as to the origin of semen. The testimony in question does not go to Lewis's past sexual activities with Wilking. Therefore, McCarthy should only have been allowed to testify if her statements were R.C. 2945.59 reads:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

This statute is an exception to the general rule that evidence of other acts is not admissible to prove any element in the crime for which the defendant now stands trial. *State v. Hector* (1969), 19 Ohio St. 2d 167. The courts of this state have long recognized that evidence of other acts "carries the potential for the most virulent kind of prejudice for the accused." *State v. Snowden* (1976), 49 Ohio App. 2d 7, 8. Therefore, the Supreme Court has directed that R.C. 2945.59 is to be strictly construed against the state. *State v. Burson* (1974), 8 Ohio St. 2d 157. defense of consent he raised the issue of his intent to commit rape. *State v. Gardner* (1979), 59 Ohio St. 2d 14. However, *Gardner* also stands for the proposition that in order for "other acts" testimony to be relevant to the issue of intent under R.C. 2945.59, the prior acts "must have such a *temporal*, modal and situational relationship with the acts

constituting the crime charged that evidence of the other acts discloses purposeful action in the commission of the offense in question." *Id.* at 20, case law directing that "other acts" are only relevant to showing motive intent, absence of mistake, or scheme, plan, and system under R.C. 2945.59 (and its predecessor G.C. 13444-19) if the two events are proximately related in time and place. See e.g., *State* v. *Curry* (1975), 43 Ohio St. 2d 66; *Scott* v. *State* (1923), 107 Ohio St. 475; *State* v. *Cocco* (1943), 73 Ohio App. 182.

In its most recent pronouncement on the admissibility of "other act" testimony under R.C. 2945.59, the Supreme Court held that:

> Our analysis of the statute and case precedent indicates that scheme, plan, or system testimony of other acts is admissible to establish motive or intent where the similarities in the crimes indicate there is a strong likelihood that the offender in the solved crime also committed the unsolved crime. We agree with appellee that the evidence appears to establish Coleman's motive and intent. Therefore, we hold the trial court did not err by admitting the challenged testimony. *State* v. *Coleman* (1988), 37 Ohio St. 3d 286, 292.

While the requirement of only a "strong likelihood" may have stepped away from a strict necessity of situational proximity, it has no effect on the requirement of a close temporal relationship. The *Coleman* Court continued to require that the "other act" occur "within a period of time reasonably near to the offense on trial" to be admissible. *Id.* at 292, citing *Curry*, *supra*, at 73.

Thus assuming *arguendo* that the events alleged by Wilking and McCarthy were related as to situation and place, the question before us is whether they were related closely enough in time to make McCarthy's testimony admissible.

This court has held that in a rape case, testimony from a third party that the defendant raped her *earlier on the same day* that he allegedly raped the complaining witness is admissible under R.C. 2945.59. *State* v. *Powell* (June 9, 1987), Montgomery App. No. 9881, unreported. In *Powell* this Court relied on *Gardner*, *supra* and stressed the importance of the temporal proximity to admissibility. In *Gardner*, *supra*, the Supreme Court held that where the defendant allegedly raped another woman *one day before* the rape for which he was

on trial, testimony regarding the prior rape is admissible. In *Curry*, *supra*, the defendant was found guilty of rape of a girl under sixteen. The alleged event occurred in July of 1972. The Supreme Court found that the trial court erred in admitting the testimony of a second teenage girl who claimed that defendant kissed her and touched her breast in December of 1972. The court held the subsequent event had no probative value as to the defendant's intent *five months earlier* because, among other reasons, the events were too far separated in time. It has also been held that testimony by a complaining witness's sister that the defendant raped her *eight years before* the alleged crime is inadmissible solely because of its remoteness in time. *State* v. *Chapman* (1959), 111 Ohio app. 441.

In the case at bar, the alleged anal rape of McCarthy took place four years before the alleged anal rape of Wilking. We find these events to be too temporally remote to have probative value as to Lewis's intent.

The erroneous admission of "other acts" testimony is harmless error if there is no reasonable possibility that the testimony contributed to the accused's conviction. *State* v. *Lytle* (1976), 48 Ohio St. 2d 391. Such is not the case in the instant matter. Lewis we convicted of anally raping Wilking but acquitted of vaginally raping her. McCarthy testified that Lewis had anally raped her four years earlier. We find there to be a very strong possibility that McCarthy's testimony contributed significantly to Lewis's conviction.

Lewis's first assignment of error is found to be well taken and is hereby sustained.

Lewis's second and third assignments of error assert that the trial court erred in failing to instruct the jury as to be limited purpose for which it could receive the testimony of McCarthy. We find these arguments to be essentially identical and will address them together. Both assignments of error will be sustained.

The State concedes that it was necessary to instruct the jury that the testimony of McCarthy that she was raped by Lewis could only be used to determine whether he had the intent to rape Wilking. Appellee's Brief, p. 5. As the Supreme Court has eloquently stated:

> Where evidence has been admitted for a limited purpose which the state claims shows the defendant did certain "other acts" which show the motive or intent of

the accused, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question which is alleged in the indictment, the jury should be instructed that such evidence must not be considered by them as any proof whatsoever that the accused did any act alleged in the indictment. *State* v. *Flonnory* (1972), 31 Ohio St. 2d 124, 129.

Due to the highly prejudicial nature of "other acts" testimony, the courts of this state have strictly applied the necessity of a limiting instruction. It has been held that a trial court commits reversible error if it waits until its general jury charge to issue a limiting instruction instead of issuing it at the same time that the "other acts" evidence is tendered. *Baxter* v. *State* (1914), 91 Ohio St. 167. It has also been held that failure to issue a limiting instruction is plain error upon which a court may be reversed even if defendant did not object. *State* v. *Crafton* (1968), 15 Ohio App. 2d 160, 165-166.

The record is clear that no limiting instruction was given to the jury when McCarthy testified. The State argues that this defect was cured in the trial court's general instructions. We are not in accord. The "limiting instruction" that the state points to appears on page 511 of the transcript. This reflects that the trial court merely read R.C. 2945.59 to the jury. At no point was the meaning of this statute explained to the jurors. At no point were the jurors told that the statute was applicable to McCarthy's testimony.

To be effective, a limiting instruction on "other acts" testimony should specifically say that this evidence is not to be used as substantive evidence that the defendant committed the crime charged. *State* v. *Pigott* (1964), 1 Ohio App. 2d 22. This proposition is not contained in the text of R.C. 2945.59, nor were the jurors made aware of it. We do not agree with the state's contention that the jury could have inferred the limiting instruction from the statute. The purpose of instructing the jury at all is to provide them with a legal framework within which to make their factual determinations. The jury should not be left to its own resources to postulate matters of law; especially matters as fundamentally important to a fair trial as the limited use to which "other acts" testimony may be put.

Lewis's second and third assignments of error are found to be well taken and are hereby

sustained.

Lewis's fourth and fifth assignments of error revolve around the unique pre-trial publicity that this case received. Lewis argues that the trial court erred in not sustaining his motion to dismiss and in not having a sequestered voir dire. We are not in accord.

Ten days before the trial in the instant case former vice-president George Bush made a publicity stop in Greene County during his successful campaign for the presidency. During his visit, Bush had a highly publicized meeting with the members of the Greene County Victim-Witness Program. This program was a federally funded effort by the prosecutor's office to offer support to complaining witnesses in criminal cases. The entire purpose of the stop in Greene County seems to be so that Bush could examine the "model program" that existed there. During his stay Bush was accompanied by local U.S. Representative Mike DeWine and Greene County Prosecutor William Schenck (who was also chairman of the Bush campaign in Greene County). The event received extensive national and local media coverage.

Bush met with people who were then participants in the Victim-Witness Program, including the complaining witness in the instant case, Wilking. Lewis has attached copies of several articles from various local newspapers to his brief wherein Wilking is identified by name and repeatedly referred to as a "crime victim", "rape victim", and "date-rape victim." Wilking herself is extensively quoted in various articles as having said that she spoke to Bush about increasing public awareness of "date-rape." Wilking acknowledged under cross-examination to having made these statements to the media. Transcript, pp. 335-340. After his meeting with Wilking and the others, Bush delivered a speech concerning his proposed anti-crime policy.

Lewis argues that because of the unusual pre-trial publicity, the trial court should have dismissed the case or held a sequestered voir dire. However, the record does not reflect that Lewis moved for a sequestered voir dire. The trial court had no duty to sequester the veniremen *sua sponte*. Therefore, Lewis's fifth assignment of error must be overruled.

The remedy for pervasive pre-trial publicity is a change of venue, not a dismissal. *Irvin* v. *Dowd* (1961), 366 U.S. 717. The trial court, being aware of this fact, informed Lewis that it would treat his motion to dismiss as a motion for a change of venue, and would reserve ruling

upon it until after attempts were made to seat a jury. Transcript, p. 5.

Voir dire in this case lasted for six hours and occupies 172 pages of the transcript. At no point did either party inquire whether any of the veniremen were aware of Wilking's meeting with Bush. Lewis's attorney states that he chose not to mention the publicity because "[t]o remind the array of that during voir dire would have been suicidal." Appellant's brief, p. 14. This court is not inclined to allow counsel to second guess their tactical decisions.

The Supreme Court has repeatedly held that the best way to determine whether pre-trial publicity has poisoned a criminal defendant's chance of a fair trial is the examination of veniremen in voir dire. *State* v. *Bayless* (1976), 48 Ohio St. 2d 73; *State* v. *Swiger* (1966), 5 Ohio St. 2d 151, certiorari denied (1966), 385 U.S. 874. Before allowing a change of venue, the trial court should wait for a clear and manifest showing by the defendant that prejudice is so pervasive that seating a jury would be a vain act. *State* v. *Herring* (1984), 21 Ohio App. 3d 18, 21. By choosing not to inquire about the publicity, Lewis has forestalled his ability to show prejudice. This court has no way of knowing any of the jurors, or for that matter any of the veniremen, knew about Wilking's meeting with Bush. In the face of a silent record, we cannot assume what the jurors were or were not exposed to, even where the pre-trial publicity was as extensive as in the instant case. Therefore, Lewis's fourth assignment of error is without merit.

Lewis's fourth and fifth assignments of error are found to be not well taken and are hereby overruled. Lewis's first, second, and third assignments of error are found to be well taken and are hereby sustained. Therefore, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings not inconsistent with this opinion.

WILSON, J., and McBRIDE, J., concur.

(Judge Robert L. McBride, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)