OPINION
{¶ 1} Defendant-appellant Dewayne Spears ("Spears") brings this appeal from the judgment of the Court of Common Pleas of Allen County finding him guilty of murder.
 {¶ 2} On April 19, 1999, the police were called to the home of April Music ("Music") by Spears. Upon arrival, the police found Music dead. Spears and Music's children were sent into the hallway. An officer attempted to question the oldest child, who was five at the time, but was unable to get understandable answers. In August of 2000, Spears was indicted on one count of aggravated murder and one count of aggravated robbery for the theft of Music's purse. A jury trial was held in June 2001.
 {¶ 3} At trial, the following testimony was presented by the state. Chinise Brown ("Brown") testified that Music had told her that Music's boyfriend had previously threatened to harm Music. A police officer testified that he responded to a domestic violence call a month prior to the murder in which Music told him that Spears had kicked her and had threatened to set her on fire or to stab her or to shoot her.[1]
Ricky Mills ("Mills") testified that Spears had told him while incarcerated that Spears had choked April with his bare hands. Nate Bundley ("Bundley") also testified that Spears had confessed to killing Music with his bare hands. Annette Williams ("Williams") testified that Spears was not home at 6:15 a.m. the morning of the murder and that Steve Hardia ("Hardia") had told her that he believed Spears had killed Music. Horrace Norris ("Norris") testified that he and Spears had gone to Music's home on the night of April 18, 1999, to drop off a television and that he had waited in the car while Music went into the home. He also testified that Spears told him that evening that Spears was going to "kick her ass." The State then read Norris's grand jury testimony in which Norris had testified that Spears had said he was going to "kill the bitch" as he sang along with a song. Ruth Albright ("Albright") testified that she saw Spears at approximately 8:00 a.m. on the morning of April 19, 1999, and that she had a feeling that he had just killed someone. Carrie Pennington ("Pennington") testified that she and Albright saw Spears on April 19, 1999, and that Albright had told her that she had a feeling that Spears had just killed someone. Music's mother testified that Spears and Music fought and that Music wanted nothing to do with Spears at the time of the murder. She also testified that her grandson had told her that Spears and Music were together again the night of the murder and that Spears kept a gun in his car.[2] Philip Saine ("Saine") testified that sometime in the month before the murder, he saw Spears crossing the street in front of his car and Spears looked at his wife. Saine also testified that Spears appeared to be following a woman on the other corner and that she was afraid of him.[3] Saine did not identify the woman as Music, but did identify the man crossing the street as Spears. Finally, testimony was given that Spears had confessed to accidentally strangling Music with his hands during rough sex. The medical examiner testified that Music died as a result of strangulation by some sort of cord, possibly an electric cord. Finally, the State presented Hardia's girlfriend who testified that Hardia was sleeping with her the night of the murder.
 {¶ 4} At the close of the State's case in chief, Spears made a motion for a directed verdict on the aggravated murder charge. The trial court granted the motion finding that the State had not proved prior calculation and design. Thus, the jury was left to deliberate on the lesser included offense of murder and the aggravated robbery charge. The jury found Spears guilty of murder and acquitted him on the charge of aggravated robbery. The trial court then sentenced Spears to fifteen years to life for the murder. It is from this judgment that Spears appeals.
 {¶ 5} Spears raises the following assignments of error.
 {¶ 6} "The trial court erred in permitting the introduction of prejudicial and improper other acts evidence. The introduction of such evidence denied Spears his rights to a fair trial, due process and a reliable determination of his guilt and sentence as guaranteed by thefifth, sixth, eighth, and fourteenth amendments to the United States Constitution and Article I, Section 10 and 16 of the Ohio Constitution."
 {¶ 7} "The trial court's cautionary instruction regarding the proper use of the 404(B) evidence introduced at trial denied Spears his rights to a fair trial, due process and a reliable determination of his guilt as guaranteed by the fifth, sixth, and fourteenth amendments to the United States Constitution and Article I, Section 10 and 16 of the Ohio Constitution."
 {¶ 8} "The trial court erred in prohibiting defense counsel from reviewing witness statements pursuant to Crim.R. 16(B)(1)(G), thereby violating his rights under the due process clause of thefourteenth amendment and the confrontation clause of the sixth amendment."
 {¶ 9} "The trial court erred in ruling Bryant Gladden incompetent to testify at trial, thereby infringing upon [Spears'] right to present witnesses in his defense as guaranteed by the sixth andfourteenth amendments to the United States Constitution."
 {¶ 10} "The trial court erred in refusing to admit Bryant Gladden's statements to police as an excited utterance exception to the hearsay rule, thereby depriving [Spears] of the ability to present a defense as guaranteed by the sixth and fourteenth amendments to the United States Constitution, as well as Article I, Section 10 of the Ohio Constitution."
 {¶ 11} "When trial counsel commits serious errors during trial that prejudice the defense the defendant is deprived of the right to the effective assistance of counsel guaranteed by the sixth andfourteenth amendments to the United States Constitution and Article I, Sections 10
and 16 of the Ohio Constitution."[4]
 {¶ 12} "The trial court erred in overruling defense counsel's objection to the prosecutor's prejudicial remarks in closing thereby depriving the defendant of the right to fair trial and due process of law as guaranteed by the sixth and fourteenth amendments to the United States Constitution."
 {¶ 13} "A conviction on a murder charge is obtained in violation of the due process clause of the fourteenth amendment when the evidence is insufficient to demonstrate the identity of the defendant as the individual who committed the murder."[5]
 {¶ 14} The third assignment of error is that the trial court erred in not permitting Spears to review prior statements made by the State's witnesses. Spears claims that he was entitled to review these prior statements under Crim.R. 16(B)(1)(g), which states as follows.
 {¶ 15} "Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 {¶ 16} "If the court determines that inconsistencies do not exist the statement shall not be give to the defense attorney and he shall not be permitted to cross-examine or comment thereon." Crim.R. 16(B)(1)(g).
 {¶ 17} In State v. Daniels (1982), 1 Ohio St.3d 69, 437 N.E.2d 1186, the Supreme Court of Ohio addressed the issue of the meaning of "participating" as set forth in Crim.R. 16(B)(1)(g). "We construe Crim.R. 16(B)(1)(g) to mean that, once the trial court independently determines that a producible out-of-court witness statement exists, attorneys for all parties must be given the opportunity to inspect the statement personally. The trial court's simply permitting the attorneys to be passively present and available for consultation during the in camera inspection constitutes reversible error." Id. at 70. Here, Spears claims that he was entitled to review prior statements of four witnesses: Ricky Mills, Nate Bundley, Annette Williams, and Horace Norris.
 {¶ 18} Spears claims that he is entitled to the prior statements of Mills and Williams. However, in his brief, Spears admits that he had been provided with a videotape of the police interview with Mills. The only things Spears was not permitted to review was a police summary of Mills' statement and a police summary of Williams' statement. The State is not required to permit Spears to review those summaries. Crim.R. 16(B)(2). Thus, the trial court did not err in denying the motions as to those statements.
 {¶ 19} Next, Spears claims that he was entitled to review a letter written by Bundley to an investigator. A letter written by a witness is a prior statement of the witness. Thus, the trial court should have permitted Spears' counsel to participate in the review of the letter to determine if it was inconsistent. Spears' counsel objected to being excluded from the review. Thus, the trial court's failure to permit Spears' counsel to participate in the review was reversible error.
 {¶ 20} Finally, Spears claims that he should have been entitled to review the grand jury testimony of Norris. During the trial, Norris testified that Spears had threatened to "kick her butt" and that he presumed Spears meant April. His testimony before the grand jury was different. Therefore, the State asked Norris if the transcript would refresh his memory and Norris said it would. The problem was that Norris cannot read. The State then proceeded, in the presence of the jury, to read the following portion of the transcript to Norris.
 {¶ 21} "Your answer — `No. He went and got in the car. I think he already was high and he had a song on, too — a tape on. He was, you know, making some jokes. He say he's going to kill that — kill the `B' word.'" Tr. Vol. 4, 671.
 {¶ 22} Norris then admitted that was his testimony. Spears' counsel then moved to review the transcript pursuant to Crim.R. 16(B)(1)(g). The trial court found that the defense was not entitled to the grand jury transcript under that criminal rule because it was inapplicable. The trial court was correct. Crim.R. 16(B)(1)(g) does not apply to grand jury testimony of witnesses. State v. Greer (1981),66 Ohio St.2d 139, 420 N.E.2d 982. The grand jury testimony could have been disclosed under Crim.R. 6(E) if Spears had shown a particularized need. A particularized need is one in which the grand jury transcript is necessary to impeach a witness, refresh his recollection, or to test his credibility and these purposes outweigh the continued need for secrecy. Id. Here, the State had already read a portion of the grand jury testimony to refresh the memory of its own witness who had already testified inconsistently with his grand jury testimony. The veil of secrecy had already been lifted by the State and the testimony used to further its case. Thus, the defense should be permitted to review the testimony of that witness and use the testimony that might be beneficial to its case. However, no request was made by Spears under Crim.R. 6(E), so we need not consider whether there was a particularized need. The third assignment of error is overruled in part and sustained as to the prior statement of Bundley.
 {¶ 23} The first and second assignments of error argue that the trial court erred in admitting other acts testimony and in giving an improper limiting instruction
 {¶ 24} In the first assignment of error, Spears claims that the trial court erred in admitting evidence of prior bad acts concerning the domestic violence complaints made against him by Music. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge, identity or absences of mistake or accident." Evid.R. 403(B). "A trial court has broad discretion with respect to the admission or exclusion of evidence, and its decision in such matters will not be reversed on appeal unless the trial court has abused its discretion and material prejudice has resulted therefrom."State v. Hawn (2000), 138 Ohio App.3d 449, 457, 741 N.E.2d 594. "Evid.R. 404(B) creates an exception for such evidence when it is, nevertheless, also probative of certain matters identified in the rule. However, the matter concerned must genuinely be in issue. * * * Further, the other act or acts offered as probative of the matter must themselves be temporally and circumstantially connected to the operative facts of the offense alleged." Id. at 462 (citations omitted).
 {¶ 25} In this case, Spears filed a motion in limine to keep the evidence of the prior domestic violence charge from being used in court pursuant to Evidence Rule 404(A). At the hearing, the State claimed that it might need the other acts to show motive, intent, identity, or lack of mistake.[6] The trial court then overruled the motion in limine on the grounds that the evidence could possibly establish one of the above purposes and be admissible under Evidence Rule 404(B). Spears again objected to the admission of the evidence at trial and the objection was overruled. The admission of evidence is left to the discretion of the trial court. Here, the trial court considered the issue and ruled that the prior bad acts were admissible under Evidence Rule 404(B). We do not find an abuse of discretion with this ruling.
¶ 26 Although we find no error with the admission of the other acts testimony concerning Music's prior complaint against Spears alleging domestic violence, that is not the only instance of other acts testimony that was admitted. However, the additional testimony was admitted without objection, which requires that it be reviewed under a plain error standard. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). The rule requires that a reviewing court find three things in order to correct an error without a timely objection to the error at trial. First, there must be an error. Second, the error must be an obvious defect in the trial proceedings. Finally, the error must have affected substantial rights meaning that it seriously affected the fairness, integrity or public reputation of judicial proceedings. Statev. Barnes (2002), 94 Ohio St.3d 21, 2002-Ohio-68, 759 N.E.2d 1240.
¶ 27 Here, the state introduced several instances of prior bad acts in addition to the police complaint against Spears that was filed by Music. The state elaborated on the fact that Spears frequently used drugs, that he possibly had used crack the night of the murder, that a woman on a street corner was allegedly very frightened of Spears sometime prior to the murder, that Music's mother had heard that Spears had allegedly threatened Music on prior occasions, and that Spears allegedly owned a gun and kept it in his car. All of this testimony had no direct connection to the events of the night in question or to the issue of whether Spears had killed Music. However, all of this testimony does indicate to the jury that Spears is not a good person. It is this type of testimony that the rules of evidence attempt to exclude in order to ensure that a defendant is given a fair trial and that he or she is convicted because the jury believes he or she committed the crime charged and not because the jury believes the defendant is a bad person who deserves to be punished. State v. Schaim (1992), 65 Ohio St.3d 51,600 N.E.2d 661. The admission of this testimony is clearly a plain error. However, the admission of this testimony alone cannot be found to have a serious affect on the fairness of the trial.
¶ 28 In the second assignment of error, Spears claims that the trial court erred in instructing the jury as to the purpose of the testimony. The trial court in this case gave the following cautionary instruction.
¶ 29 "With regard to this kind of evidence there is a specific rule that says evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake, or accident.
¶ 30 "So, again, I'm giving you that instruction and telling you that you've got to apply that rule in terms of how you listen to this type of evidence." Tr. 559.
¶ 31 This instruction was nothing more than a recitation of the rule. "Where evidence has been admitted for a limited purpose which the state claims shows the defendant did certain `other acts' which show the motive or intent of the accused, the absence of mistake or accident on his part, or the defendant's scheme plan or system in doing the act in question which is alleged in the indictment, the jury should be instructed that such evidence must not be considered by them as any proof whatsoever that the accused did any act alleged in the indictment." Statev. Flonnory (1972), 31 Ohio St.2d 124, 129, 285 N.E.2d 726.
¶ 32 "To be effective, a limiting instruction on "other acts" testimony should specifically say that this evidence is not to be used as substantive evidence that the defendant committed the crime charged. * * * This proposition is not contained in the text of R.C. 2945.59, nor were the jurors made aware of it. We do not agree with the state's contention that the jury could have inferred the limiting instruction from the statute. The purpose of instructing the jury at all is to provide them with a legal framework within which to make their factual determinations. The jury should not be left to its own resources to postulate matters of law; especially matters as fundamentally important to a fair trial as the limited use to which `other acts' testimony may be put." State v. Lewis (1990), 66 Ohio App.3d 37, 43-44, 583 N.E.2d 404
(citations omitted).
¶ 33 In this case, the trial court gave an instruction very similar to that in Lewis. The trial court merely read the rule, which is very similar to the statute. However, the rule does not sufficiently explain the limited purpose of the testimony. The trial court was required to explain the law to the jury, not merely read the rule and let them attempt to determine the meaning of the rule. At no point did the trial court explain to the jury why the "other acts" testimony was being admitted or for what limited purpose it could be considered.
¶ 34 Although Spears requested a limiting instruction, he did not object that the instruction given was not proper. Thus, pursuant to Criminal Rule 30, Spears has waived the issue for appeal absent plain error. The Ohio Supreme Court has held that plain error does not arise where "the absence of such an instruction made no difference in the jury's verdict; nothing suggests the jury used the evidence to convict the appellant on the theory [he or she] was a bad person." State v.Grant (1993), 67 Ohio St.3d 465, 472, 620 N.E.2d 50. Similarly, "[t]he admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment." Schaim, supra at 59. Generally, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which the accused is on trial are not admissible to show that the defendant acted in conformity with his or her bad character. Evid.R. 404. Accordingly, we must look to whether the record indicates that the absence of the instruction made a difference in the jury's verdict and whether anything suggests that the jury used the evidence to convict Spears solely because the members of the jury assumed that he had a propensity to commit violent or criminal acts, or deserves punishment regardless of whether he committed the crime charged.
¶ 35 Here, the trial court did not give an appropriate limiting instruction at any time. Without this instruction, the jury could not know that it could only consider the "other acts" testimony for certain reasons and not for the sole determination of guilt. Thus, the trial court erred in not giving the proper limiting instruction as requested by Spears. Given the great amount of other acts testimony that was presented in this case, the effect of the failure to give a proper instruction could have a significant effect on the jury. The effect of the great amount of other act testimony admitted and the failure of the trial court to give a proper limiting instruction when requested does affect the fundamental fairness of the proceedings and thus reaches the level of plain error. The first and second assignments of error are sustained.
¶ 36 In the fourth assignment of error, Spears claims that the trial court should have found Bryant Gladden ("Gladden") competent to testify. Children under the age of ten years of age who appear incapable of receiving just impressions and relating them truly are deemed incompetent to testify at a trial. Evid.R. 601(A). At the time of trial, Gladden was seven years old. The trial court held a hearing to determine Gladden's competency as a witness. At the hearing, Gladden testified that he did not know the difference between the truth and a lie and that he did not really remember what happened the night his mother died. Given this testimony, the trial court did not err in finding Gladden incompetent to testify at the time of trial. The fourth assignment of error is overruled.
¶ 37 The fifth assignment of error claims that the tape of Gladden should have been admitted as an excited utterance. In general, decisions concerning the admission of evidence are within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. Dorsey v. Donohoo (1992), 83 Ohio App.3d 415, 615 N.E.2d 239. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). There is no set amount of time after which a statement can no longer be considered to be an excited utterance. State v. Taylor (1993), 66 Ohio St.3d 295,612 N.E.2d 316. The only requirements are that the statement is made while the declarant is still under the stress of the event and that the statement is not a result of reflective thought. Id. An appellate court must give significant regard to a trial court's determination as to whether a statement is an excited utterance. State v. Cornell (1998),129 Ohio App.3d 106, 717 N.E.2d 361.
¶ 38 Here, the video tape in question is a record of a detective questioning five-year-old Gladden a few hours after he found his mother's body. On the tape, Gladden is playing with a stuffed dog and does not appear to be overly upset. Gladden seems to be under the impression that his mother was sleeping. On the tape, Gladden makes statements that another man besides Spears was in the home that night and his mother had fought with that man. However, Gladden also tells the detective that he was in bed. The story given by Gladden changes as the interview progresses as might be expected when speaking with a young child. The trial court determined that Gladden did not seem to be excited and ruled that the tape was hearsay and inadmissible. Since the images of Gladden on the tape could support such a finding, the trial court did not abuse its discretion in excluding the tape. The fifth assignment of error is overruled.
¶ 39 In the seventh assignment of error, Spears argues that the State's closing argument contained instances of prosecutorial misconduct. Prosecutorial misconduct is not grounds for reversal unless it so taints the proceedings that it deprives the defendant of a fair trial. State v. Phillips (1995), 74 Ohio St.3d 72, 656 N.E.2d 643.
¶ 40 During closing arguments, the prosecutor made the following statement.
¶ 41 "The first mention, in fact of Steve Hardia was at that house in the hall when Patrolman Elchert had taken the children and Dewayne Spears into a hall, behind the curtain, and says, or, he's trying to get information out of him and he can't understand what the boy is saying. He can't understand Dewayne. Dewayne is, like, kind of whimpering — kind of like in the videotape with Patrolman (sic) Kleman where it appeared that he was crying but he went in and he sat up and there was no indication of tears or anything of that nature. But, when the boy wasn't understandable it was Dewayne Spears who said, `Who was here — Steve?' The little boy, shaken, shook his head `yea'. Well think about those circumstances. Okay? That child is there with somebody who has killed his mother. You decide what that poor little soul is going to do. But there is absolutely, and never have you heard that the word of `Steve' ever came out of Bryant Music's mouth." Tr. 8, 1480-81.
¶ 42 Defense counsel objected to this statement. In the tape which was ruled inadmissible, Gladden, in an interrogation room with only a detective present, does state that Hardia was there the night his mother was killed. In fact, this statement was repeatedly made. The only reason that the jury did not hear the statement is because the trial court ruled it inadmissible as a hearsay statement. The ethical considerations state that a prosecuting attorney has a duty to seek justice, not merely to obtain a conviction. E.C. 7-13. The disciplinary rules of the State of Ohio prohibit an attorney from alluding to any matter that will not be supported by admissible evidence. DR 7-106. The rules also prohibit an attorney from knowingly making a false statement of law or fact. DR 7-102. Although the prosecutor's statement did not technically violate the rules, it did violate the spirit of the rules. It is true that the jury did not actually hear any testimony that Gladden had actually stated that Hardia was present that night. However, the prosecutor's argument implies that Gladden never said Hardia was there, but was only agreeing with Spears. This is not a correct statement of the facts.
¶ 43 In addition to the above argument, a review of the record reveals that the prosecutor made other statements that could be considered inappropriate.[7] The first such statement is as follows.
¶ 44 "He's going to fix that T.V. He was unsuccessful. When he was unsuccessful he decided that he was going to go out and get a crack head's T.V. * * * He went to a crack house. You heard Bay-Bay — Horace Norris — the defendant smokes crack cocaine.
¶ 45 "So he was gone for a little bit. I submit to you the evidence would indicate that he, in fact did drugs." Tr. 8, 1472.
¶ 46 The testimony given by Norris was that Spears had used crack cocaine on other occasions. However, on this night, Norris did not know whether Spears had used drugs. Regardless of whether Spears did or did not use drugs that evening, the argument is irrelevant. Spears is only on trial for murder and burglary. Neither of these offenses had drug use as an element.
¶ 47 The prosecutor later made the following statement. "I will not forget what Mrs. Albright said — something to the effect of `he looked like he just killed somebody.'" Tr. 8, 1477-78. This statement by Albright referred only to her "feeling" for which she had no basis in fact. It is a complete speculation and should have been stricken if counsel had objected. The witness' personal opinion that Spears had killed an unidentified someone is not admissible under the rules of evidence for any proper purpose. Thus, the prosecutor should not have referred to it in his closing argument.
¶ 48 Finally, the prosecutor discussed the testimony of Saine. The prosecutor summed up Saine's testimony as follows.
¶ 49 "Now, remember a couple of days before the murder there was a situation with Mr. Saine. He was on Collett Street with his wife, in a car, and he saw a person who matched the identity of the person who was on the T.V. April 20th, 1999. Who do we know who that was? That was Dewayne Spears. That person was tailing April Music. He was following her and she was trying to get away from him. Now folks, that's around the weekend, be it Friday or Saturday, and the murder taking place on a Monday morning, April 19th of '99. That's an independent observation of a witness clearly identifying through the T.V. this defendant. No one else was on." Tr. 8, 1482.
¶ 50 The actual testimony of Saine differs considerably.
¶ 51 "Well, I was pulling out of a drive-thru that faces North Street. It's on the corner of North and Collett. You go in on North Street and you exit on to Collett Street. My wife was actually driving. We went to exit on to Collett Street and we had to wait for an individual to walk in front of our car. He was looking at my wife. My wife said, "What's his problem?" Then she looked over and we saw a young lady standing on the corner of North and Collett, waiting to cross the street. It was obvious that this individual was following her and that she was in a state of fear from this individual.
¶ 52 "Q. Okay. Now, did you get a look at this individual.
¶ 53 "A. Yes. I was probably about from me to you from him.
¶ 54 "Q. We're talking ten/fifteen feet?
¶ 55 "A. Yea.
¶ 56 "Q. Is that individual present in the Courtroom?
¶ 57 "A. You know, the thing about that is in two years I couldn't tell you that in two years I could retain the ability to identify an individual like that, but I'd say in the time that elapsed from the time that he walked in front of my vehicle until the time that they showed him being led into the Courtroom it was very much positive that that was the individual.
¶ 58 "Q. No question in your mind?
¶ 59 "A. No question in my mind. I even yelled out to my wife. I said, `Come here and look. This is the guy that we saw the other day.' It was just a matter of two or three days as far as I remember.
¶ 60 "* * *
¶ 61 "Q. You said sometime in April; didn't you?
¶ 62 "A. I believe it was.
¶ 63 "Q. And you don't know a specific date; do you?
¶ 64 "A. No, I don't." Tr. 3, 486-87.
¶ 65 In his testimony, Saine never identified the woman as Music. In addition, he never explained how he knew the woman was afraid of the man or that he was following her. His testimony was that he saw the man, who he believed to be Spears walking in front of his car towards the street corner where a woman was standing, waiting to cross the street. Neither the woman nor the man were running, yelling, or acting in any other excited manner. Yet from this testimony, the prosecutor came to the conclusion and argued to the jury that the woman was Music and that Spears was following her to harm her. This argument is not supported by the evidence.
¶ 66 All of these statements considered separately are not sufficient to deprive the defendant of a fair trial. However, the cumulative effect of these statements along with the other errors made in this trial is prejudicial and denied Spears a fair trial. Thus, the seventh assignment of error is sustained.
¶ 67 The sixth assignment of error claims that Spears was denied effective assistance of counsel. The eighth assignment of error claims that the evidence was insufficient to sustain the conviction. Since Spears will be receiving a new trial due to errors at law, any of the errors alleged in these assignments of error are moot. Thus, we need not address them.
¶ 68 The judgment of the Court of Common Pleas of Allen County is reversed and the matter is remanded for further proceedings.
Judgment reversed and cause remanded.
 HADLEY and WALTERS, JJ., concur.
[1] The officer did not have Music make an official statement and did not gather any evidence that the events had occurred. Additionally, his report did not contain many of these statements, so he was testifying solely from memory.
[2] The grandson is Bryant Gladden, Music's son, who was five-years-old at the time.
[3] How Saine knew that Spears was following the woman or that she was afraid of him is unknown. No testimony was given that she was acting afraid or that she was running away from him. According to the testimony, the woman was just standing on the corner waiting to cross the street. She did not speak to Saine or attempt to get his attention.
[4] This is drafted as a proposition of law, not an assignment of error. However, we will treat it as an assignment of error challenging the competency of counsel.
[5] This also has been drafted as a proposition of law rather than an assignment of error. It will be treated as an assignment of error challenging the sufficiency of the evidence.
[6] This court notes that counsel for the State claims that the defense has to show why the exceptions to the rule do not apply. The rules require that the party attempting to present the evidence of prior bad acts to the jury has the burden of explaining why the exception should apply and the evidence should be admitted.
[7] Defense counsel did object to some of these statements. However, they were not discussed in Spear's brief.