[Cite as *State v. Bogan*, 2012-Ohio-3712.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                                    :
                                                 :    Appellate Case No. 24896
          Plaintiff-Appellee                     :
                                                 :    Trial Court Case No. 2010-CR-3411
v.                                               :
                                                 :
SOLOMAN I. BOGAN                                 :    (Criminal Appeal from
                                                 :     Common Pleas Court)
          Defendant-Appellant                    :
                                                 :

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of August, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
          Attorney for Appellee

KENT J. DePOORTER, Atty. Reg. #0058487, 7501 Paragon Road, Lower Level, Dayton, Ohio 45459
          Attorney for Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}    Soloman I. Bogan appeals from his conviction and sentence on charges of

rape, kidnapping, aggravated burglary, aggravated robbery, and firearm specifications.

{¶ 2} In his sole assignment of error, Bogan contends the trial court erred in admitting into evidence most of a video recording of his post-arrest interview with detectives. Specifically, he contends the State failed to establish that other burglaries he admitted committing shared "a close temporal connection" with the crimes in this case. Absent such a temporal connection, Bogan insists the other-acts evidence was inadmissible.

{¶ 3} The record reflects that Bogan was indicted in December 2010 on charges involving events that had occurred twelve years earlier. The matter proceeded to trial in October 2011. The victim, M.S., testified that she and a friend had gone out for drinks on the night of Thursday, August 20, 1998. In the early morning hours of Friday, August 21, 1998, she returned to her home on Red Haw Road in Dayton, where she lived with her brother and parents. After going upstairs and using the bathroom, M.S., who was twenty-two years old at the time, encountered an African-American male in the house. M.S. could not identify the male. His face was covered with a long black scarf. The male held a silver handgun to her face and forced her to remove her clothes. He proceeded to rape her in a bedroom while holding the gun. Although M.S.'s parents were home, she did not yell or attempt to awaken them out of concern for their safety.

{¶ 4} After raping M.S., the male demanded money and rummaged around her brother's bedroom and other rooms. Several minutes later, he returned to M.S., put his gun to her head, and raped her again. He then inquired about the location of her mother's purse. She replied that it was on the dining-room table, and the male disappeared from view. M.S. remained still for fifteen to twenty minutes. When she did not hear anything, she ran to the

bathroom and put on a robe. M.S.'s brother came home at that time, and she told him what had happened. They informed M.S.'s mother and attempted to contact the police. Upon discovering that the phone lines had been cut, M.S.'s brother called 911 on a cordless phone. An examination of the home revealed that a kitchen window had been propped open, the screen was open, and there was a chair by the window. Police also found a partial shoe print on the window sill.

{¶ 5}   M.S. underwent a sexual-assault examination at an area hospital. A nurse swabbed M.S.'s back and buttocks where her attacker twice had ejaculated on her. A forensic examination of the swab revealed the presence of semen. Police lacked a suspect, however, with whom to compare the semen. Years passed without the crime being solved. Then, in September 2010, Dayton police detective Teresa Lawson received notification that DNA recovered from M.S.'s back and buttocks matched Bogan's DNA.

{¶ 6}   Bogan was found in Columbus, Ohio. Police arrested him and brought him to Dayton. Detective Lawson and another detective interviewed him on October 27, 2010. A redacted recording of the interview was played at trial and admitted into evidence. During the interview, Bogan, who was sixteen years old in 1998, admitted that he had lived in M.S.'s neighborhood in 1998 and that he had carried a chrome and black handgun. He also admitted that he had broken into homes in M.S.'s neighborhood as a juvenile, beginning when he was fourteen or fifteen years old. He denied breaking into M.S.'s house, however, and denied knowing where Red Haw Road was located.

{¶ 7}   When shown a picture of M.S. from 1998, Bogan stated that she was unattractive and old. He told the detectives he had never seen her and would not have talked to

her. He denied having sex with her. After the detectives advised Bogan that his DNA had been found on M.S., he changed his story. He admitted he may have had sex with M.S. but claimed he did not rape her.

{¶ 8} Bogan's long-time friend Dontay Henderson testified in his defense at trial. Henderson claimed that he recalled seeing M.S. arrive at Bogan's house on August 20, 1998, and go upstairs with Bogan. Henderson presumed Bogan and M.S. were going to have sex. Henderson testified that Bogan's aunt, Melinda Vaughn, came home a short time later, became angry, and made him leave.

{¶ 9} Vaughn also testified for the defense. She claimed she came home and saw Henderson sitting on her couch. She then went upstairs and found Bogan in his bedroom having sex with a woman. Vaughn did not recall the month of the incident, but she stated that it was a Thursday or Friday toward the end of the month. When shown a photo of M.S., Vaughn identified her as the woman she had seen having sex with Bogan. Vaughn admitted, however, that defense counsel had previously shown her a picture of M.S. and had told her M.S. was Bogan's accuser before she testified.

{¶ 10} After hearing the evidence, a jury convicted Bogan on all charges. The trial court imposed an aggregate eighteen-year sentence. This appeal followed.

{¶ 11} In his sole assignment of error, Bogan challenges the trial court's admission of State's Exhibit 16, the redacted recording of his post-arrest interview with detectives. In particular, he challenges the trial court's failure to exclude the part of the interview in which he admitted having committed other burglaries in M.S.'s neighborhood. Bogan contends his statements about these burglaries did not qualify as other-acts evidence under R.C. 2945.59

because the State failed to establish a temporal proximity between these other crimes and the intrusion into M.S.'s home.

{¶ 12} The statute upon which Bogan relies, R.C. 2945.59, provides:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶ 13} Bogan cites this court's opinion in *State v. Lewis*, 66 Ohio App.3d 37, 583 N.E.2d 404 (2d Dist.1990), for the proposition that other-acts evidence is admissible under the statute only if the other acts have a sufficient temporal relationship with the current offense. *Id.* at 41 (recognizing that "'other acts' are relevant only to showing motive, intent, absence of mistake, or scheme, plan, and system under R.C. 2945.59 * * * if the two events are proximately related in time and place"). In *Lewis*, this court relied on, inter alia, *State v. Coleman*, 37 Ohio St.3d 286, 575 N.E.2d 792 (1988), wherein the Ohio Supreme Court required "that the 'other act' occur 'within a period of time reasonably near to the offense on trial' to be admissible." *Id.* at 292.

{¶ 14} In support of his temporal proximity argument, Bogan asserts:

In State's exhibit 16, the Appellant admits to committing other

burglaries in the area. However, nowhere in the record is it indicated that these events shared a close temporal relationship. Those crimes could have taken place years before. It cannot be said that the playing of this exhibit did not in some way influence the jury. The burden was on the State to show a close temporal relationship and that was not done.

(Appellant's brief at 8).

{¶ 15} Upon review, we find Bogan's argument to be unpersuasive. Bogan challenged the admissibility of State's exhibit 16 in several pre-trial motions in limine. The first of those motions dealt with the admissibility of his statements about committing other burglaries in M.S.'s neighborhood. (Doc.# 57). In his motion, Bogan argued that his statements about other burglaries were inadmissible under Evid.R. 404(B), which is similar to R.C. 2945.59 and provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[1]

{¶ 16} . The trial court orally overruled the motion in limine dealing with Bogan's statements about committing other burglaries. During an October 14, 2011 hearing, the trial court explained:

> * * * And then let's take up motion in limine number 1. And that
> addresses the issue of Mr. Bogan's statements made to the detectives, the other

---

[1]Although Bogan argued Evid.R. 404(B) below and cites R.C. 2945.59 on appeal, the policies underlying the rule and the statute "are essentially the same[.]" *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, 966 N.E.2d 958, ¶ 67 (12th Dist.). "There is little difference between Evid.R. 404(B) and R.C. 2945.59." *State v. Horsley*, 10th Franklin Dist. No. 05AP-350, 2006-Ohio-1208, ¶ 22.

homes he burglarized in the area. And again, I would overrule that motion, finding that a 403 objection is not well-founded as to that evidence. And that testimony or evidence is not to show a propensity for engaging in a wrongful conduct, which would be improper under Rule 404 but, rather, is appropriate under the exception in Rule 404(B), that shows that, again, the opportunity, motive, planning, modus operandi, and so on, which I believe is appropriately introduced to the jury in this case, particularly in light of the totality of the statements that Mr. Bogan made, which was, as I take it, the gist is that yes, he admits that he would occasionally burglarize home[s] in that part of town, and that he possessed a firearm, but he denies that he engaged in a rape in connection with those activities. So I think that the evidence is particularly probative as to the plethora of other charges in the indictment against Mr. Bogan as well as in connection with the rape charge itself, because it is probative as to his undertaking the predicate steps for the rape charge.

(Tr. Vol. I at 127-128).

{¶ 17}   The trial court agreed with Bogan, however, that other parts of his interview with the detectives should not be shown to the jury. As a result, the trial court ordered a redacted copy of his interview to be prepared. At trial, the State requested permission to play the redacted interview recording, State's Exhibit 16, during detective Lawson's testimony. (Tr. Vol. III at 509). Bogan's counsel made no contemporaneous objection to the request, which the trial court granted. (*Id*. at 509-510). Only after the State presented all of its evidence and rested its case did defense counsel object. Specifically, during the admission of the State's

exhibits, Bogan's attorney stated: "Judge, consistent with the previous motion in limine, understanding what the Court's decision is, so Defense counsel is going to object to that playing of the video and the admission of the video, Judge." (*Id*. at 540). The trial court overruled the objection "on the grounds articulated previously with regard to the Defendant's motion in limine." (*Id*.).

**{¶ 18}** Ordinarily, we review a trial court's ruling on admissibility under Evid.R. 404(B) for an abuse of discretion. *State v. Morris*, __ Ohio St.3d __, 2012-Ohio-2407, __ N.E.2d __, ¶ 22 ("[T]rial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court. Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review.").

**{¶ 19}** In the present case, however, we are limited to plain-error review because Bogan did not preserve the Evid.R. 404(B) issue for appeal. As set forth above, he initially raised the issue through a pre-trial motion in limine. A trial court's ruling on such a motion is anticipatory in nature and does not preserve the issue for appellate review.[2] *State v. Wilson*, 2d Dist. Montgomery No. 24577, 2012-Ohio-3098, ¶ 48. Thus, "[w]e need not review a trial court's ruling on a motion in limine unless the error is preserved by a timely objection when the issue is reached at trial." *Word of God Church v. Stanley*, 2d Dist. Montgomery No. 23985, 2011-Ohio-2073, ¶ 22.

**{¶ 20}** To be timely, an evidentiary objection at trial must be made when the State

---

[2] In the proceedings below, the trial court specifically advised Bogan's counsel that "liminal rulings are always preliminary in nature and subject to change." (Tr. Vol. I at 115).

presents the evidence. A defendant cannot wait until after the State rests its case to raise an objection. "The law is well settled that failure to contemporaneously object during the identification of a document and testimony regarding it forfeits appellate review." *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 49. (finding forfeiture where the defendant "failed to contemporaneously object during the identification of [a] 911 tape, the publishing of the tape before the jury, and testimony regarding it" and waited "until the close of the State's case to raise an objection"); *see also State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 92 (declaring an evidentiary objection untimely and ineffective because the defendant failed to object when the evidence was published to the jury and instead waited until "*after* the state's case had concluded, when the court was considering the admission of exhibits").

{¶ 21} The record in Bogan's case reflects that his attorney raised the Evid.R. 404(B) issue (1) before trial in a motion in limine and (2) after the State had rested when the trial court was considering the admission of exhibits. Defense counsel raised no objection, however, at the critical time—when the State sought to play State's Exhibit 16 at trial. Therefore, in light of the foregoing case law, Bogan has forfeited all but plain-error review of the issue on appeal.

{¶ 22} We find no plain error here. Bogan does not contest the trial court's conclusion that his statements about committing other burglaries could establish "opportunity, motive, planning, modus operandi, and so on[.]" His specific argument is that the State failed to establish a sufficient temporal proximity between his other crimes and the intrusion into M.S.'s home. He asserts that his other burglaries "could have taken place years

before." As the State points out, however, Bogan stated during his interview that he began committing burglaries when he was fourteen or fifteen years old. He was sixteen years old when M.S. was raped. Having reviewed the entire redacted recorded interview, we believe Bogan's statements to the detectives reasonably support a conclusion that he was committing burglaries before, during, and after the instant offense—not just "years before" as Bogan suggests.

{¶ 23} It is well settled that plain error does not exist unless the error is "obvious" and, but for the error, the outcome at trial "clearly would have been otherwise." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108. Even if we assume, purely arguendo, that the trial court obviously erred in resolving the Evid.R. 404(B) issue, we cannot say the outcome would have been different if the jury had not heard about Bogan's other burglaries. The undisputed DNA match in this case constituted overwhelming evidence that Bogan had sex with M.S. The only question was whether the sexual activity occurred in her home under the conditions she and her witnesses described, or whether it was consensual and occurred in the home Bogan shared with his aunt. Having reviewed the record, we agree with the State that "Bogan's attempts to establish that he had consensual sex with M.S. through the testimony of Vaughn and Henderson lacked believability." (Appellee's brief at 23). Based on all of the evidence presented below, including Bogan's initial claim that M.S. was unattractive and that he would not have had sex with her, his belated claim of consensual sex lacks any credibility.

{¶ 24} Bogan's assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.


Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Kent J. DePoorter
Hon. Mary L. Wiseman