[Cite as *State v. Cash*, 193 Ohio App.3d 224, 2011-Ohio-1404.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

THE STATE OF OHIO,                          :

      Appellee,                          :      **C.A. CASE NO. 23731**

v.                                          :      **T.C. CASE NO. 09-CRB-8451**

CASH,                                       :      **(Criminal Appeal from**
                                         **Municipal Court)**

      Appellant.                         :

. . . . . . . . .

O P I N I O N

Rendered on the 25th day of March, 2011.

. . . . . . . . .

John Danish, City of Dayton Law Director, Stephanie Cook, Chief Prosecuting Attorney, and Matthew Kortjohn, Asstistant Prosecuting Attorney, for appellee.

Victor A. Hodge, Assistant Public Defender, for appellant.

. . . . . . . . .

GRADY, Presiding Judge.

{¶ 1} Defendant, Ann Cash, appeals from her conviction and sentence for assault.

{¶ 2} On July 26, 2009, at around 12:50 a.m., Vanessa Robinson was with her boyfriend, Jerome Hunt, at his home at 4114 Silven Drive, in Dayton, Ohio. As Robinson and Hunt were leaving Hunt's residence, defendant pulled up in her vehicle. Defendant and Hunt have a five-year-old child. Defendant exited her vehicle and immediately began arguing with Hunt, questioning why he was with Robinson. Before long, defendant and Robinson were arguing with each other over Hunt. The verbal altercation included cussing and name calling

and soon turned physically violent.

{¶ 3} According to Robinson, after she called defendant a felon, defendant punched her in the face. Robinson fell to the ground, and there was no further physical contact between her and defendant. Robinson was having difficulty breathing and used Hunt's phone to call 9-1-1. By the time police arrived, defendant had fled. Robinson was transported to Good Samaritan Hospital for treatment of her injuries, which included bruises on her jaw.

{¶ 4} According to Hunt and defendant, Robinson started the physical altercation by trying to hit defendant, who struck Robinson in self-defense. Robinson managed to pull defendant's hair, causing defendant to fall and injure her knee. When Hunt restrained Robinson, defendant left the scene.

{¶ 5} Defendant was charged by complaint filed in Dayton Municipal Court with one count of assault, R.C. 2903.13(A), a misdemeanor of the first degree. At Robinson's request, the trial court issued a criminal protection order, R.C. 2903.213, as a pretrial condition of defendant's release, prohibiting defendant from having any contact with Robinson. Following a trial to the court, defendant was found guilty of assault. The trial court sentenced defendant to pay a $100 fine plus costs and continued the protection order already in place.

{¶ 6} Defendant timely appealed to this court.

FIRST ASSIGNMENT OF ERROR

{¶ 7} "The cumulative effect of errors denied appellant a fair trial and the right to effective representation of counsel."

{¶ 8} Defendant argues that due to the cumulative effect of the trial court's multiple errors, she was denied a fair trial. *State v. DeMarco* (1987), 31 Ohio St.3d 191.

{¶ 9} With respect to the alleged multiple errors committed by the trial court to which

defendant refers, defendant first argues that the trial court erred on two separate occasions by unduly limiting the scope of cross-examination of Robinson, which defendant claims denied her due process and her right to a fair trial. The first occasion involved the following exchange between defense counsel and Robinson:

{¶ 10} "Q.   Well, you stated that your relationship began in December?

{¶ 11} "A.   That is correct

{¶ 12} "Q.   And Mr. Hunt and Miss Cash share a child together, correct?

{¶ 13} "A.   That's correct.

{¶ 14} "Q.   So their relationship has lasted much longer than your relationship with Mr. Hunt?

{¶ 15} "THE COURT:   You know I'm going to sua sponte to stop this questioning because you, yourself objected to anything outside of the particular incident, so don't go there.

{¶ 16} "THE DEFENSE: O.K."

{¶ 17} Evid.R. 611 provides:

{¶ 18} "(A) Control by court.  The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

{¶ 19} "(B) Scope of cross-examination. Cross-examination shall be permitted on all relevant matters and matters affecting credibility."

{¶ 20} In *State v. Ross*, Montgomery App. No. 22958, 2010-Ohio-843, at ¶ 9, we observed:

{¶ 21} "On cross-examination, a party may inquire into all matters pertinent to the case

that the party calling the witness would have been entitled or required to raise. *In re Fugate* (Sept. 22, 2000), Darke App. No. 1512, citing *Smith v. State* (1932), 125 Ohio St. 137, 180 N.E. 695, paragraph one of the syllabus. However, the trial court has broad discretion in imposing limits on the scope of cross-examination. *State v. Cobb* (1991), 81 Ohio App.3d 179, 183, 610 N.E.2d 1009. Trial judges have wide latitude 'to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674. An appellate court will not interfere with a trial court's decision about the scope of cross-examination absent an abuse of discretion. *Fugate,* supra. The term 'abuse of discretion' 'connotes more than an error in * * * judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140."

**{¶ 22}** Defense counsel's question during cross-examination of Robinson concerning the nature and length of her relationship with Jerome Hunt was not relevant to any fact of consequence in determining whether defendant knowingly caused physical harm to Robinson. Accordingly, the trial court's sua sponte exclusion of that evidence was not an unreasonable exercise of the court's discretion in limiting questioning of the witnesses to relevant matters. No abuse of the trial court's discretion has been demonstrated.

**{¶ 23}** The second alleged instance of trial-court error involved the following exchange between defense counsel and Robinson:

**{¶ 24}** "Q.   And, could you explain to the court because you didn't—what happened to Miss Cash's purse?

{¶ 25} "A.   I don't know what happened with her purse.

{¶ 26} "Q.   You didn't throw her purse?

{¶ 27} "A.   No, I did not.   My purse—her purse and my purse, my belongings—

{¶ 28} "THE COURT: You know, I'm going again, because the prosecution is not objecting, sua sponte this was not part of direct so could we limit cross to what addressed in direct?   Maybe you can bring it up in your case in chief?

{¶ 29} "THE DEFENSE: OK, well—Your Honor, you're saying that I can't ask her any other questions?   I'm stuck with the answers that she gave during direct?

{¶ 30} "THE COURT: Well, that is the rule isn't it?

{¶ 31} "THE DEFENSE: Ah—

{¶ 32} "THE COURT: Your cross is limited to what was asked in direct.   He did not open the door with regards to a purse.   If there's a purse of significant (sic) to the defense, you may do that in your case in chief, in this instance I don't see it.

{¶ 33} "THE STATE: your Honor, if I may—

{¶ 34} "THE COURT: Yes, please.

{¶ 35} "THE STATE: I know that defense counsel is allowed to ask questions to impeach the witness.   I guess at this point based on similar questions that were asked, I would—

{¶ 36} "THE COURT: Is that an impeachment, Miss Vernekar?

{¶ 37} "THE DEFENSE: Ah—Well Your Honor, I'm just trying to get the whole story. I think that the story she gave was limited to the questions that she was asked on direct.

{¶ 38} "THE COURT: Alright.

{¶ 39} "THE DEFENSE: So, I can't impeach her because she wasn't asked the

question on direct.

{¶ 40} "THE COURT: I will give you some latitude with regards to that. Let's just try to keep a focus, OK?

{¶ 41} "Q. Let me ask my question in a different way, did you ever throw Miss Cash's purse?

{¶ 42} "A. No, I didn't.

{¶ 43} "Q. Did you ever see Mr. Hunt with a flashlight trying to find Miss Cash's keys so that she could leave?

{¶ 44} "A. No, I didn't.

{¶ 45} "Q. So, that didn't happen according to you?

{¶ 46} "A. Nope."

{¶ 47} In limiting defense counsel's cross-examination to matters that were raised on direct examination, the trial court may have confused Fed.Evid.R. 611(B), which includes that limitation, with its Ohio counterpart, Ohio Evid.R. 611(B), which has no such requirement. Both rules permit cross-examination on matters affecting credibility. In that regard, the state suggested that defense counsel might be asking questions about whether Robinson ever threw defendant's purse, causing the contents including her car keys to spill, in order to impeach Robinson. At that point the trial court reversed its own ruling and allowed defense counsel some leeway in asking about the purse. Defense counsel then asked whether Robinson threw defendant's purse and whether Robinson ever saw Hunt with a flashlight looking for the contents of defendant's purse. While the trial court's initial sua sponte ruling may have been error, the court clearly corrected itself and allowed defense counsel to ask about the purse. No abuse of discretion has been demonstrated.

{¶ 48} Defendant next argues that the trial court erred by questioning one of the state's witnesses, Officer Jennifer Stack. That exchange was as follows:

{¶ 49} "THE COURT: I have a question, through the process of your brief investigation, did you have an opportunity to learn who if anyone had been—who was attacked and who was the attacker?

{¶ 50} "OFFICER STACK: Yes, when I went to the hospital. I actually went to Grandview? Good Sam after I left Silven and spoke with the victim at the hospital.

{¶ 51} "THE COURT: And is that person who is the alleged perpetrator in the courtroom today?

{¶ 52} "OFFICER STACK: I never—

{¶ 53} "THE COURT: You wouldn't know. Thank you.

{¶ 54} "OFFICER STACK: Right, I never had any contact with her that night.

{¶ 55} "THE COURT: Thank you."

{¶ 56} Evid.R. 614 provides:

{¶ 57} "(A) Calling by court. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

{¶ 58} "(B) Interrogation by court. The court may interrogate witnesses, in an impartial manner, whether called by itself or by a party.

{¶ 59} "(C) Objections. Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present."

{¶ 60} At the outset, we note that defendant did not object to the trial court's questioning of Officer Stack. Therefore, defendant has waived all but plain error. Plain error

does not exist unless it can be said that but for the error, the outcome of the trial clearly would have been different. *State v. Long* (1978), 53 Ohio St.2d 91.

{¶ 61} The trial court has the authority to question witnesses called by the parties. Evid.R. 614(B). The defense in this case was that defendant hit Robinson in self-defense after Robinson attacked defendant. Defense counsel had previously inquired during cross-examination of Robinson whether she had hit defendant. The court's questioning of Officer Stack was simply designed to determine who the initial aggressor had been in the physical altercation between defendant and Robinson, an important factor in a self-defense claim. The court's question was relevant and proper. No error, much less plain error, has been demonstrated.

{¶ 62} Finally, defendant argues that certain statements the trial court made suggest that the court applied incorrect legal standards. For instance, in overruling defendant's Crim.R. 29 motion for acquittal at the close of the state's case, the trial court stated: "I'm going to deny your motion. I think that it's the court's opinion that there was sufficient evidence to suggest that Miss Robinson was in fact hit. I acknowledge that it was only her word. She was credible and therefore I find that this crime did occur." Based upon that statement, defendant argues that the trial court improperly used determinations that are reserved for the trier of facts concerning the credibility of the witnesses as a basis to overrule defendant's Crim.R. 29 motion.

{¶ 63} A Crim.R. 29 motion challenges the legal sufficiency of the evidence. A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380. When considering a

Crim.R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the state and determine whether reasonable minds could reach different conclusions on whether the evidence proves each element of the offense charged beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261. The motion will be granted when reasonable minds could only conclude that the evidence fails to prove all the elements of the offense. *State v. Miley* (1996), 114 Ohio App.3d 738.

{¶ 64} The trial court's statement in its entirety demonstrates that in overruling defendant's Crim.R. 29 motion for acquittal the court relied upon its conclusion that the state presented *sufficient evidence* to prove that defendant assaulted Robinson. Furthermore, as the trier of facts in this case, it was up to the trial court to determine the credibility of the witnesses. The trial court did not apply an incorrect legal standard.

{¶ 65} Defendant additionally argues that the trial court applied an incorrect burden of proof when at the end of the trial the court stated: "I find for the prosecution and find probable assault." The court's entire statement was as follows:

{¶ 66} "Therefore, I find for the prosecution and find probable assault. Excuse me before I say that, I don't, it's my opinion that there was insufficient evidence to suggest that there was a self-defense; all within the testimony of Miss Cash. Therefore, I find that assault was committed. I find for Miss Robinson."

{¶ 67} Subsequently, the trial court stated: "I find you guilty of assault," and "I find you guilty and your fine will be a hundred dollars plus court costs." The court's journal entry reflects that the court found defendant guilty following trial. Although the court does not specifically state that it found defendant guilty "beyond a reasonable doubt," we will not presume from a silent record that the court applied an incorrect legal standard. To the

contrary, we must presume the regularity and validity of the trial court's proceedings, and that it applied the correct legal standard, in the absence of evidence to the contrary. *State v. Carroll* (Sept. 23, 1980), Montgomery App. No. 6532. No error on the part of the trial court has been demonstrated.

{¶ 68} Because defendant has failed to demonstrate that multiple errors were committed by the trial court, the cumulative-error doctrine is not applicable in this case. *State v. Whitfield*, Montgomery App. No. 22432, 2009-Ohio-293.

{¶ 69} Defendant's first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

{¶ 70} "The trial court erred by continuing in effect the protection order issued in this case."

{¶ 71} On July 28, 2009, the trial court issued a criminal protection order pursuant to R.C. 2903.213, prohibiting defendant from having any contact with Robinson, as a condition of defendant's pretrial release. The court reaffirmed that order on August 7, 2009, when it imposed defendant's sentence. Defendant argues that the trial court lacked authority to continue that protection order as part of her sentence, because R.C. 2903.213(E)(2) states that such protection orders terminate as a matter of law upon disposition of the criminal case.

{¶ 72} The state concedes in its appellate brief that pursuant to R.C. 2903.213(E)(2) the trial court lacked authority to continue the protection order as part of defendant's sentence, and that the protection order issued in this case terminated as a matter of law when the trial court found defendant guilty of assault and sentenced her accordingly. We agree.

{¶ 73} Defendant's second assignment of error is sustained.

{¶ 74} Pursuant to R.C. 2953.08(G)(2), that portion of the trial court's sentence

continuing the protection order issued pursuant to R.C. 2903.213 is reversed and vacated.   As so modified, the trial court's judgment and sentence is otherwise affirmed.

Judgment affirmed in part

and reversed in part.

HALL, J., concurs.

FAIN, J., concurs separately.

———————————

FAIN, J., concurring.

{¶ 75} I concur fully in the judgment and the reasoning of the court.   I write separately merely to renew my objection to the "more than an error of law" formulation for abuse of discretion.   See *State v. Beechler*, Clark App. No. 09-CA-54, 2010-Ohio-1900, ¶ 60-70.