[Cite as *State v. Fuller*, 2012-Ohio-1979.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO       :

           :  Appellate Case No. 24598

   Plaintiff-Appellee   :

           :  Trial Court Case No. 2010-CR-2328/1

v.           :

           :

JOHN FULLER      :  (Criminal Appeal from

           :   Common Pleas Court)

   Defendant-Appellant  :

           :

         . . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of May, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0034517, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
   Attorney for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. #0034517, 135 West Dorothy Lane , Suite 209, Kettering, Ohio 45429
   Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

  **{¶ 1}**  Defendant-appellant John Fuller appeals from his conviction and sentence

for one count of Felonious Assault, two counts each of Kidnapping and Aggravated Robbery, all with firearm specifications, and one count of Having Weapons Under Disability. Fuller claims that his convictions are against the manifest weight of the evidence and that they are not supported by sufficient evidence. He argues that he was denied his right to a speedy trial, and he maintains that his two Kidnapping convictions and one of his Aggravated Robbery convictions should have been merged because they are allied offenses of similar import.

{¶ 2}   We conclude that Fuller's convictions are supported by sufficient evidence and that they are not against the manifest weight of the evidence. We conclude that Fuller was not denied his right to a speedy trial. We conclude that Fuller's Kidnapping convictions are not allied offenses of similar import, but his Kidnapping conviction under Count 2 of the indictment should have merged with his Aggravated Robbery conviction under Count 4. Consequently, that part of the judgment convicting Fuller of Kidnapping under Count 2 and Aggravated Robbery under Count 4 is Reversed; this cause is Remanded for merger of those two counts and re-sentencing accordingly; and the judgment is Affirmed in all other respects.

## I.   The Evidence

{¶ 3}   The State presented the testimony of the victim, Andrew Sheets, Deputies Snyder and Walters, Detective Daugherty, and one of Fuller's co-defendants, Rayshawn Arnold. In order to explain how the police so quickly became involved in the investigation of the crimes against Sheets, the State also called to the stand Sheets's mother, his girlfriend, Jennifer Hopkins, and Hopkins's neighbor, Toylyn Blunt, who witnessed the

carjacking. The State's evidence is as follows:

{¶ 4}   Late one afternoon in July, 2010, Fuller and Arnold discussed finding a drug dealer to rob. As the day progressed, the plan shifted to carjacking someone in Dayton and using the car to drive to Cincinnati to rob a convenience store. Armed with Fuller's revolver, the two men went to Fuller's brother's home, where they met up with Fuller's cousin, Arthur Jackson. Fuller and Arnold told Jackson of their plan, and late that evening the three men began roaming the streets looking for a victim.

{¶ 5}   The men ran into Rick Burgan at a gas station and told him of their plan. Burgan suggested taking a car from the gas station, but the plan was rejected because of surveillance cameras. Still armed with Fuller's revolver, the four men headed into a nearby neighborhood, where they encountered Andrew Sheets getting into his black Land Rover.

{¶ 6}   Sheets had just left the home of his girlfriend, Jennifer Hopkins, to head home. As he got into his car, he noticed several unknown males approaching him from the corner. Sheets heard footsteps quickly approaching and looked out his window to see a gun pointed at his head. Burgan forced Sheets at gunpoint into the back seat of the car and drove the Land Rover away with Fuller in the front seat, and Arnold, Jackson, and Sheets in the back.

{¶ 7}   Hopkins's neighbor, Blunt, had heard banging outside and looked out her window. She saw a tall man bending toward the driver's window of a black Land Rover, banging on the car and demanding that the driver open the door. When the car door opened, she recognized a terrified-looking Sheets in the driver's seat. Blunt saw a second, somewhat shorter, man run by her house. She heard the first man order Sheets into the back seat before

getting into the car and driving away. Blunt told her husband what she had seen. He called 911 and then drove off to look for Sheets's car, while Blunt waited in their home for the police to arrive.

{¶ 8} Sheets's abductors demanded money and drove to a nearby ATM, where Sheets was told to withdraw all of the money from his bank account. On the drive, Arnold and Jackson took Sheets's watch, wallet, and cell phone. Sheets withdrew $120, handed it to Burgan, and returned to the back seat as ordered.

{¶ 9} Fuller and his three co-defendants again discussed driving to Cincinnati to rob a convenience store, but Sheets's car did not have enough gas to make it that far. Burgan drove to a field, where Sheets remained with Arnold and Fuller, who forced him to remain face-down on the ground. Burgan and Jackson went to get gas. While in the field, Fuller took Sheets's driver's license from his wallet and told Sheets that they now knew who he was and where he lived, so they could come after him and his family if he reported the crimes to the police.

{¶ 10} When Burgan and Jackson returned to the field, Arnold blindfolded Sheets with a t-shirt. Sheets was then pushed into the back seat and told to keep his head down. Fuller drove the men to Cincinnati, where Arnold and Burgan robbed a United Dairy Farmers (UDF), taking among other things some Black and Mild cigars, which Fuller, Burgan, and Jackson smoked on the way back to Dayton. Arnold testified that Fuller kept the box of cigars on his lap in the driver's seat. During the drive, when Sheets asked questions of the men and tried to stretch his body, Jackson hit him with the gun on the side of the head, and Burgan punched him in the face.

{¶ 11}     In the early morning hours, Arnold (and perhaps one of the other defendants) was dropped off before the other men returned Sheets to the area from which he had first been kidnapped.  The men returned Sheets's watch and wallet and told him to wait for five minutes before leaving.  After several minutes, Sheets removed the blindfold.  After realizing that his keys were missing, along with a GPS and an iPod from his glovebox, Sheets ran more than three miles to his home.

{¶ 12}     Due to the threats made while in the field, Sheets was reluctant to tell anyone what had happened.  However, once home, he quickly learned that Blunt had witnessed the kidnapping and called the police, and his parents had also reported him missing.  Thus, the police were already investigating the crimes.

{¶ 13}     Because Sheets was blindfolded during most of the ordeal, and he was forced to keep his head down, he was not able to describe or identify his four captors beyond telling police that they were four tall, young men.  The only one whose face he got a look at was Burgan, who first approached the Land Rover, pointing a gun at Sheets's head.

{¶ 14}     Police investigation led to the discovery of Fuller's fingerprints on the glass and frame of the rear passenger door of Sheets's car.  Fuller's right palm print was also found on a box of Black and Mild cigars found on the driver's floorboard of Sheets's car.  From analyzing cell tower "ping" data obtained from Sheets's cell phone service provider, police traced Sheets's phone to within 400 yards of Fuller's home about half an hour after Sheets's ordeal had ended.  Further Investigation revealed the identities of Burgan, Jackson, and Arnold.  Detective Daugherty interviewed Fuller and his three co-defendants and obtained written statements from Arnold, Jackson, and Burgan.

## II.   Course of Proceedings

{¶ 15}   Fuller was indicted on one count of Felonious Assault, two counts each of Kidnapping and Aggravated Robbery, all with firearm specifications, and one count of Having Weapons Under Disability.   The case was tried to a jury.   In addition to the evidence summarized above, the State introduced a certified copy of the judgment entry of Fuller's conviction for Assaulting a Police Officer, which was necessary to prove his conviction for Having Weapons Under Disability.

{¶ 16}   By the time of Fuller's trial, both Jackson and Burgan had pled guilty to the charges against them in relation to the crimes committed against Sheets.   Arnold was scheduled for a plea hearing the week after Fuller's trial, at which time Arnold intended to plead guilty to all charges.

{¶ 17}   The only defense witness was Fuller, who testified that while he had been with Arnold, Jackson, and Burgan earlier in the day, they did not discuss a robbery.   Fuller claimed that when the others left that evening, he stayed home with his mother, sister, and nieces.   Between 11:30 p.m. and midnight that night, Burgan and Jackson returned to his house, driving a black SUV.   When they pulled up, Burgan rolled down the back passenger window, and Fuller leaned into the rear window of the car to talk to Jackson and Burgan, who were in the front seats.   Fuller then walked around to the driver's window and took a Black and Mild cigar from the box that Jackson handed to him.   Burgan and Jackson invited Fuller to join them in committing a robbery.   Fuller claimed that he declined the offer and returned to the house, where he remained with his mother, sister, and nieces.

{¶ 18}    Fuller was found guilty of all charges and specifications.   The trial court sentenced him to seventeen years in prison.   From his conviction and sentence, Fuller appeals.

### III.   Fuller's Convictions Are Neither Against the Manifest Weight
### of the Evidence Nor Unsupported by the Evidence

{¶ 19}    Fuller's First Assignment of Error is as follows:

"THE  APPELLANT'S  CONVICTIONS  WERE  AGAINST  THE  MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 20}    Fuller's Second Assignment of Error is as follows:

"THE  EVIDENCE  WAS  INSUFFICIENT  TO  SUPPORT  THE  APPELLANT'S CONVICTIONS."

{¶ 21}    In Fuller's First Assignment of Error, he argues that his convictions are against the manifest weight of the evidence.   In his Second Assignment of Error, he maintains that his convictions are not supported by sufficient evidence.

{¶ 22}    A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law.   *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).   The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991): "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such

evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶ 23}    In contrast, when reviewing a judgment under a manifest weight standard of review:

> "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction."  *Thompkins,* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 24}    Fuller does not deny that the crimes against Sheets occurred, or that Arnold, Burgan, and Jackson committed those crimes.  Fuller argues that he was not the fourth man involved.

{¶ 25}    Fuller points out that Sheets could not positively identify him as one of the perpetrators.  Nor could Fuller be identified from the security footage from the bank, the gas station, or the convenience store.  Although Fuller characterizes Sheets's testimony to mean that Fuller definitely had not been one of the four men involved in the crimes, Sheets actually testified that he could not definitely state whether Fuller had or had not been in the Land

Rover; he simply was not sure because he had been forced to keep his head down and he had been blindfolded. Sheets explained, "I just don't know who was in the car except the one person – the only time I ever saw a face was when it first came up to my car with a gun. That's the only time I ever saw a face."

{¶ 26} Fuller insists that the only evidence linking him to the crimes is Arnold's testimony, which was not credible, both because it is inconsistent with Arnold's first statement to the police, and because Arnold had entered into an unspecified plea agreement with the State in exchange for his testimony.

{¶ 27} The credibility of witnesses and the weight to be given to their testimony are primarily matters for the trier of fact to resolve. *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). The jury heard the testimony of all of the witnesses and saw their demeanor on the stand. "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *State v. Spears,* 178 Ohio App.3d 580, 2008-Ohio-5181, 899 N.E.2d 188, ¶ 12 (2d Dist.), quoting *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684, (Aug. 22, 1997). "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict." *State v. Pounds,* 2d Dist. Montgomery No. 21257, 2006-Ohio-3040, ¶ 39, citing *State v. Bradley,* 2d Dist. Champaign No. 97-CA-03, 1997 WL691510 (Oct. 24, 1997).

{¶ 28} Arnold explained that he initially lied to the police until he was shown surveillance footage and was made aware that another co-defendant's statement had

implicated him. At that point, he decided to tell the police the truth. Moreover, Arnold's testimony paralleled Sheets's testimony. Arnold's testimony also aligned with the events that Blunt observed and with other information that the police gathered during the course of their investigation. Arnold's testimony was not inherently incredible.

{¶ 29} Fuller offered the jury explanations why his fingerprints were on Sheets's Land Rover and the box of Black and Mild cigars. Fuller claimed that his fingerprints were found on the window frame because he had leaned on the Land Rover when Burgan and Jackson came to his house. He had no explanation for how his fingerprints were also found on the window, which he said was rolled down. As for the palm print on the Black and Mild package, Fuller insisted that it must have been there because he accepted a cigar from Burgan and Jackson. The jury was entitled to accept or reject any or all of Fuller's testimony.

{¶ 30} The State also offered evidence that Sheets's cell phone, which was never recovered, was traced to within 400 yards of Fuller's home, about half an hour after Sheets was released and the kidnappers had fled.

{¶ 31} Finally, to the extent that Fuller offered an alibi, in that he claimed to have been at home with his mother, sister, and nieces, we point out that Detective Daugherty testified that he was unable to confirm Fuller's alibi with any of his relatives. And, the only evidence of this alibi presented at trial was Fuller's own testimony.

{¶ 32} The jury was in the best position to evaluate the credibility of all of the witnesses' testimony. The jury's verdict indicates that it found the State's witnesses to be more credible than Fuller. A jury does not lose its way simply because it chooses to believe the State's witness over the defendant. *Pounds* at ¶ 40. Based on the record before us,

Fuller's convictions are not against the manifest weight of the evidence, and they are supported by sufficient evidence.

**{¶ 33}** Fuller's first two assignments of error are overruled.

**IV.   Fuller Was Brought to Trial Within the Speedy-Trial Time**

**Prescribed by R.C. 2945.71**

**{¶ 34}** Fuller's Third Assignment of Error is as follows:

"THE APPELLANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED BECAUSE HE WAS NOT TRIED WITHIN 90 DAYS OF HIS ARREST."

**{¶ 35}** In his Third Assignment of Error, Fuller first claims that he was denied his statutory right to a speedy trial, because his trial counsel sought and obtained continuances without Fuller's knowledge or consent.  Specifically, he contends that the first three of his five continuances did not toll his speedy trial time, because they were not signed by counsel and because they failed to state reasons for the requested continuances.

**{¶ 36}** The State contends that Fuller waived this issue by failing to raise it prior to the start of trial, as required.  See, e.g., *State v. Knight,* 2d Dist. Greene No. 2003 CA 14, 2004-Ohio-1941, ¶ 7, citations omitted.  Although the trial court did not address Fuller's motion to dismiss until the lunch break on the first day of trial, it is clear from the record that Fuller did make an oral motion on the morning of trial, albeit off the record.  While the record does not reveal at precisely what time the motion was made, we note that when the trial court did address the motion, the State made no objection.  Moreover, at the April 1, 2011 hearing on Fuller's motion for a new trial, during  which he again raised his speedy-trial claim, the

State conceded that "If he wishes to argue speedy trial, that's been preserved for appeal." Therefore, we presume that Fuller's oral motion to dismiss was made in a timely manner.

{¶ 37}   Fuller was charged with six felony offenses.  A defendant charged with a felony must be brought to trial within 270 days after his arrest.  R.C. 2945.71(C)(2).  When calculating the 270 days, each day that the defendant is held in jail on the pending charge shall be counted as three days.  R.C. 2945.71(E).  However, the time within which a defendant must be brought to trial may be extended for a number of reasons, as set forth in R.C. 2945.72.  Relevant to this case, speedy trial time may be tolled during "[a]ny period of delay necessitated by the accused's lack of counsel * * * " under R.C. 2945.72(C) and during "[t]he period of any continuance granted on the accused's own motion * * * " under R.C. 2945.72(H).

{¶ 38}   Fuller was arrested on August 6, 2010, and he remained in jail prior to his trial.  Thus, absent any tolling of Fuller's speedy trial time, he was required to have been brought to trial by November 4th.  Fuller's jury trial began on November 29th.

{¶ 39}   The record shows that Fuller filed motions for continuances on September 2nd, September 9th, September 16th, October 1st, and October 14th.  He acknowledges that "for purposes of trial preparation, a defendant's statutory right to a speedy trial may be waived, with or without the defendant's consent, by the defendant's counsel." *State v. King,* 70 Ohio St.3d 158, 160, 637 N.E.2d 903 (1994), citing *State v. McBreen,* 54 Ohio St.2d 315, 376 N.E.2d 593 (1978), syllabus.  Accordingly, Fuller concedes the validity of the last two motions for continuances.  However, he challenges the first three motions, claiming that they were not signed by his attorney and that they did not include reasons for the requests.

Without reference to either statute or case law, he concludes that these three continuances should not have tolled his speedy trial time.

{¶ 40} "When the defendant's request for a continuance appears in the record, the absence of an explanation for the continuance in a journal entry should not allow Defendant to use the speedy trial statute as a sword rather than the shield it was designed to be." *State v. Richardson,* 2d Dist. Clark No. 03CA92, 2004-Ohio-5815, ¶ 15. Therefore, although it is recommended that whenever a defendant requests a continuance, he offer a reason for his request, an explanation is not required. *State v. Garries,* 2d Dist. Montgomery No. 19825, 2003-Ohio-6895, ¶ 19, citing *State v. Stamps,* 127 Ohio App.3d 219, 222, 712 N.E.2d 762 (1st Dist.1998). Thus, the lack of stated reasons for Fuller's first three requested continuances does not mean that those continuances count against the State for speedy trial purposes.

{¶ 41} We next turn to Fuller's argument that the first three continuances should not toll his speedy trial time because they were not signed by his attorney. A review of the contested motions shows that the first motion is, in fact, not signed. The second motion is signed by an unidentified person, on defense counsel's behalf. Fuller claims that "[i]t is doubtful that Appellant's counsel actually signed the third continuance * * *." The State insists that Fuller and his attorney requested the continuance on September 16, 2010, in open court in order to allow for time to review additional discovery. We have not been provided with a transcript of this hearing. However, the written motion does bear a signature purporting to be that of Fuller's attorney.

{¶ 42} We have no reason to doubt that any of the first three continuances were sought by Fuller's trial counsel. Notably, there has never been any indication in the record by

that attorney that he had not caused those motions to have been filed. Absent evidence in the record to the contrary, we presume the regularity of all proceedings in the trial court below. *State v. Cash,* 193 Ohio App.3d 224, 2011-Ohio-1404, 951 N.E.2d 486 (2d Dist.), ¶ 67, citation omitted. Therefore, the five continuances requested by counsel on Fuller's behalf served to toll Fuller's speedy trial time by a total of 47 days. R.C. 2945.72(H).

**{¶ 43}** Additionally, the running of Fuller's speedy trial time was tolled by the time necessitated by the filing of his attorney's motion to withdraw on October 20th, until new counsel was appointed a week later, on October 27th. R.C. 2945.72(c).

**{¶ 44}** When the 54 tolled days are considered, Fuller was required to have been brought to trial by December 28th. Fuller's trial began on November 29th, well within the statutorily required speedy time limit. Accordingly, Fuller was not denied his right to a speedy trial.

**{¶ 45}** Fuller's Third Assignment of Error is overruled.


**V.  The Merger Issues**

**{¶ 46}** Fuller's Fourth Assignment of Error is as follows:

"THE COURT ERRED WHEN IT DID NOT MERGE THE KIDNAPPING COUNTS AND THE KIDNAPPING WITH THE AGGRAVATED ROBBERY."

**{¶ 47}** In his Fourth Assignment of Error, Fuller contends that the trial court should have merged his two Kidnapping convictions with each other and with his Aggravated Robbery conviction related to the taking of Sheets's money at the ATM, because the three crimes are allied offenses of similar import. For the following reasons, we conclude that

although the two Kidnapping convictions were not required to be merged, Fuller's Kidnapping conviction on Count 2 of the indictment should have been merged with his Aggravated Robbery conviction on Count 4.

{¶ 48}    Revised Code 2941.25, Ohio's multiple count statute, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 49}    In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 44, the Ohio Supreme Court overruled its earlier ruling in *State v. Rance,* 85 Ohio St.3d 632, 710 Ohio St.3d 632 (1999), "to the extent that it calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25.   [Now w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered."

{¶ 50}   The Court explained:

Under R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct.  Thus, the court

need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.

In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other offense with the same conduct, not whether it is possible to commit one *without* committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import. *Johnson* at ¶ 47-48 (Emphasis in original), citing *State v. Blankenship,* 38 Ohio St.3d 116, 119, 526 N.E.2d 816 (1988) (Whiteside, J., concurring).

{¶ 51} In other words, "[i]f the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act committed with a single state of mind.' " *Id.* at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50. "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Johnson,* at ¶ 51 (Emphasis in original).

{¶ 52} In Count 2 of the indictment, Fuller was charged with a violation of R.C. 2905.01(A)(2), which states: "No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other

person, * * * [t]o facilitate the commission of any felony or flight thereafter." Count 3 charges Fuller with violating R.C. 2905.01(B)(2), which states: "No person, by force, threat, or deception, * * * shall knowingly [restrain another of the other person's liberty], under circumstances that create a substantial risk of serious physical harm to the victim * * *." Fuller insists that these two convictions should have merged as allied offenses of similar import.

{¶ 53} During the first Kidnapping, Sheets was forcibly removed from the place where he was found in front of his girlfriend's home and driven to a nearby ATM in order to facilitate the Aggravated Robbery that occurred at that location. Sheets was then left waiting in a field with Fuller and Arnold while Burgan and Jackson used some of Sheets's money to put gas in his vehicle so that the four defendants could drive to Cincinnati to rob a convenience store. At that point, the defendants could have chosen to release Sheets, having achieved the criminal purpose for which he was kidnapped.

{¶ 54} Instead, the defendants committed a second Kidnapping when they forced Sheets, at gunpoint, back into his car and drove him to Cincinnati, where the defendants robbed a convenience store. The second Kidnapping involved circumstances that created a substantial risk of serious physical harm to Sheets, both with regard to the additional danger that arose from the extended time that Sheets was forced to spend in the company of his armed assailants, who feloniously assaulted him during the drive, and with regard to the added danger inherent in his unwilling presence at the scene of a second armed robbery.

{¶ 55} Consequently, Counts 2 and 3 were not committed by the same conduct, nor were they committed with the same animus. Accordingly, Counts 2 and 3 were not required

to have been merged as allied offenses of similar import.

**{¶ 56}** Fuller also argues that his Kidnapping convictions should have merged with his Aggravated Robbery conviction for taking Sheets's money at the ATM, as charged in Count 4 of the indictment. This issue was not addressed on the record below, which means that Fuller has waived all but plain error. *State v. Long,* 53 Ohio St.2d 91, 95-96, 372 N.E.2d 804 (1978); Crim.R. 52(B). We have previously held that a failure to merge allied offenses of similar import constitutes plain error. *State v. Coffey,* 2d Dist. Miami No. 2006 CA 6, 2007-Ohio-21, ¶ 14.

**{¶ 57}** In Count 4, Fuller was convicted of Aggravated Robbery, in violation of R.C. 2911.01(A)(1), which states: "No person, in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

**{¶ 58}** The record demonstrates that Fuller's first Kidnapping of Sheets was committed in order to facilitate the Aggravated Robbery that occurred at the ATM. As Burgan drove to the ATM, Arnold and Jackson took Sheets's watch, wallet, and cell phone. Once at the ATM, Sheets was ordered at gunpoint to withdraw all of the available cash from his bank account. When these two charges were discussed at the sentencing hearing, the State conceded that since Fuller needed Sheets's password to access his bank account, "[t]he ag [sic] robbery cannot occur without * * * them doing the kidnapping." The offenses charged in Counts 2 and 4 amounted to "a single act committed with a single state of mind," and they should have merged.

**{¶ 59}** Accordingly, Fuller's Fourth Assignment of Error is sustained in part and overruled in part. We remand this matter to the trial court for merger of Counts 2 and 4. The trial court shall adjust Fuller's sentence accordingly.


## VI. Conclusion

**{¶ 60}** Fuller's first three assignments of error having been overruled, and his Fourth Assignment of Error having been sustained in part and overruled in part, that part of the judgment of the trial court convicting Fuller of both Kidnapping under Count 2 of the indictment, and Aggravated Robbery under Count 4 of the indictment, is Reversed; the judgment of the trial court is Affirmed in all other respects; and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck
Andrew T. French
William O. Cass, Jr.
Hon. Timothy N. O'Connell