[Cite as *State v. Quinn*, 2016-Ohio-139.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | |
|---|---|
| STATE OF OHIO | : |
| | : Appellate Case No. 2014-CA-44 |
| Plaintiff-Appellee | : |
| | : Trial Court Case No. 13-CR-869 |
| v. | : |
| | : (Criminal Appeal from |
| JAMES QUINN | : Common Pleas Court) |
| | : |
| Defendant-Appellant | : |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of January, 2016.

. . . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg. No. 0074057, 120 West Second Street, Suite 400, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1}   Defendant-appellant James Quinn appeals from his conviction and

sentence for two counts of Domestic Violence, two counts of Kidnapping, one count of Abduction, and one count of Intimidation. Quinn has raised nine assignments of error, contending that the trial court erred by allowing evidence of other criminal acts, without giving the defense prior notice, and by not allowing cross-examination on the other-acts testimony or giving the jury a proper limiting instruction. Quinn argues that the State engaged in prosecutorial misconduct and that the trial court failed to give prior notice of the victim's lack of credibility. Quinn contends that he was denied the effective assistance of counsel. Quinn also argues that the record does not support the imposition of consecutive sentences, and that the court erred in not merging the Intimidation conviction with the Domestic Violence convictions, because the offenses were committed as one continuous course of conduct. Finally, Quinn argues that his convictions are not supported by sufficient evidence and are against to the manifest weight of the evidence.

{¶ 2} We conclude that the trial court properly admitted evidence of prior convictions, and that Quinn was given advance notice of the intent to present that evidence, because the prior convictions were identified in the indictment as an element of the offense. We conclude that the record does support that a proper limiting instruction was given for the other-acts evidence, and that Quinn was not denied the opportunity to cross-examine the witness on this subject. We conclude that the trial court had no obligation to provide advance notice of its findings regarding the victim's credibility, and that Quinn failed to establish a record of any potential discovery violation. We conclude that the record fails to portray that Quinn received ineffective assistance of counsel. We conclude that the findings the trial court made for the imposition of consecutive sentences are not clearly and convincingly unsupported by the record, and

we conclude that the court did not err in refusing to merge the Intimidation conviction with one of the other offenses for purposes of sentencing. We also conclude that the convictions are supported by the sufficiency of the evidence and are not against the manifest weight of the evidence. Therefore, the judgment of the trial court is Affirmed.

## I. The Assault on Quinn's Mother

{¶ 3} The victim, Beverly Quinn, is a 79-year-old woman, the mother of two daughters and two sons, including the defendant, James Quinn.  In December 2013, Quinn's girlfriend, Samantha Ferrell, was living with Quinn's mother, Beverly, in her two-bedroom house. At that time, Quinn was under indictment for a domestic violence incident involving his mother; as a condition of bond he was subject to a no-contact order with his mother.   Late in the evening, Beverly was awakened by noise, and found Quinn and Ferrell in her home, drinking vodka and watching television. Beverly told Quinn he was not allowed to be there and asked Quinn to leave, to turn off the television, and for Samantha to go to her room.   Quinn became very angry with his mother, pushed her into a chair, and hit her.   When Quinn suggested to Samantha that they take his mother to "mental health," Samantha suggested that they take Beverly out into the country and dump her. Beverly then ran to her own bedroom, locked the door, and left the house by crawling out of the bedroom window.   Beverly went to a neighbor's house and called the police.   During the 911 call, Quinn identifies her son, James Quinn, as the person who has abused her, and states that Quinn left her house driving a white station wagon. Quinn and Samantha left Beverly's house before the police arrived. The police took photos of Beverly's bruises, and allowed her to return to her own home after they verified

it was empty and secured. One of the two officers who spoke with Beverly at this time testified that Beverly was very articulate and said it was her son who had struck her in the face. No charges were filed against Quinn at this time.

{¶ 4} According to Beverly's testimony at trial, several hours later Quinn returned to his mother's home, without Samantha, forced entrance into his mother's bedroom, and forced his mother to leave the house with him, threatening to take her to the country and make her jump off a bridge. Beverly described her son as very angry and intoxicated on alcohol and drugs. Beverly left with her son because she felt she had no choice. He drove out into the country, stopped at a bridge and said, "if you don't jump, I'll push you." According to Beverly, Quinn decided he could not do it, and told her that he wouldn't do anything to her as long as she did not testify against him. Beverly testified at trial that Quinn then drove to Walmart, hitting her in the head numerous times as he was driving. After he left the car, Beverly got out of the car and approached a Walmart employee for help. She told the employee that her son had hurt her and was trying to kill her. The Walmart employee verified this course of events and testified that Beverly was scared, but she knew who she was, where she was, and was not disoriented or confused. The Walmart employee testified that as Beverly was talking to him, a man came up to both of them, grabbed Beverly's arm and complained that she was trying to hurt him. The employee insisted that he let go and leave her alone. A surveillance video of the Walmart parking lot corroborates this testimony, but is taken from too far a distance to identify the man's facial features. The surveillance video shows that Beverly approached the employee, a man approached them, and then the unidentified man left in a white station wagon. The employee could not identify Quinn as the person he saw and talked with in

the parking lot. Beverly testified at trial that Quinn was driving her car, which she described as a tan sedan, not a white station wagon. No witness identified Quinn as the man depicted in the video in the Walmart parking lot.

{¶ 5} The detective who interviewed Beverly at Walmart testified that Beverly identified her son, James Quinn, as the person who attacked her in her home, who forced her into a car, threatened to harm her, and hit her face, causing visible injuries. The detective also testified that during his interview on the scene, Beverly was very emotional, but lucid and articulate about the events of the evening.   Based on this interview, the detective obtained a search warrant. A search of Beverly's home revealed evidence that her bedroom door had been damaged as the result of being forced open.

{¶ 6}  Beverly was transported to the hospital by ambulance and treated in the Emergency Room at Springfield Regional Medical Center. The paramedic who transported Beverly testified that she was alert and oriented. The ER Nurse testified that Beverly was oriented, and did not appear to suffer from dementia or any other mental defect.   The ER Nurse testified that Beverly identified her son as the person who had hit and injured her.

{¶ 7}   At trial, evidence of Quinn's two prior convictions for Domestic Violence was admitted through court records. Beverly acknowledged that she was the victim of one of the prior Domestic Violence convictions.


## II. The Course of Proceedings

{¶ 8}  In November 2013, Quinn was indicted on one count of Domestic Violence, a felony of the third degree, in violation of R.C. 2919.25(A). In December 2013, Quinn

was indicted on two counts of Domestic Violence, felonies of the third degree, in violation of R.C. 2919.25(A); two counts of Kidnapping, felonies of the first degree, in violation of R.C 2905.01(B)(1); one count of Abduction, a felony of the third degree, in violation of R.C. 2905.02(A)(2); and one count of Intimidation, a felony of the third degree, in violation of R.C. 2921.04(B)(1). The trial court ordered that the two indictments be consolidated and tried together. On the day of trial, the State moved to dismiss the charge in the first indictment, and the dismissal entry was filed the day after the sentencing hearing on the convictions from the second indictment. A jury found Quinn guilty on all counts in the second indictment. One day after the jury verdict, the trial court conducted a sentencing hearing.

{¶ 9} At the sentencing hearing, the trial court merged the two Kidnapping charges and the Abduction charge for purposes of sentencing. The State elected to proceed on count three, a charge of Kidnapping. The court denied the defense request to merge Kidnapping with the Intimidation conviction, or the Domestic Violence conviction with the Intimidation conviction upon the ground that all of these offenses were committed as one continuous course of conduct. The trial court rejected the argument that the offenses were committed by the same conduct. Quinn made a statement to express his remorse, and the victim's granddaughter made a statement to explain the impact on the family. The State described Quinn's criminal history, although neither a pre-sentence investigation report, nor any other documentation, was presented to support the statements. The State urged the court to order consecutive sentences because the offenses were committed while Quinn was under indictment and out on bond for an earlier charge of Domestic Violence against the same victim, and because consecutive

sentences were necessary to protect the public and the victim.

{¶ 10}   Quinn was sentenced to serve a total of twenty years in prison; three years for each of the two Domestic Violence convictions, three years for the Intimidation conviction, and eleven years for the Kidnapping conviction (into which the Abduction conviction had been merged). The trial court ordered the sentences to run consecutively, after finding that consecutive sentences are necessary to protect the public from future crime and to punish the defendant, are not disproportionate to the seriousness of the defendant's conduct and to the danger the defendant poses to the public, are necessary to protect the public from future crime by the defendant given the defendant's history of criminal conduct, that at least two of the multiple offenses were committed as a course of conduct and the harm caused by the offenses so committed is so great or unusual that no single prison term adequately reflects the seriousness of the defendant's conduct, and that the defendant committed one or more offenses while he was under indictment awaiting trial.

**III. The Trial Court Did Not Err by Admitting Evidence of Prior Convictions and Quinn Was Given Prior Notice of the State's Intent to Use That Evidence**

{¶ 11}   Quinn's First Assignment of Error asserts as follows:

THE INTRODUCTION OF 404(B) EVIDENCE WAS ERROR AND THE STATE OF OHIO FAILED TO ADHERE TO EVID. R. 404(B) BY FAILING TO PROVIDE NOTICE OF INTENT TO USE EVIDENCE

{¶ 12} The admission of other-bad-acts evidence under Evid.R. 404(B) "lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary

decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Miller*, 2d Dist. Montgomery No. 26371, 2015-Ohio-2714, ¶ 12, citing *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 96.

{¶ 13} The Supreme Court of Ohio has held that where a prior conviction elevates the degree of a subsequent offense, the prior conviction is an essential element that the State must prove beyond a reasonable doubt. *State v. Henderson*, 58 Ohio St.2d 171, 173, 389 N.E.2d 494 (1979). This rule has been applied to admit evidence of a defendant's two prior convictions for Domestic Violence to elevate a third offense to a third-degree felony. *State v. Fry,* 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 90. In the case before us, the State called a witness from the Clerk of Courts, who testified to establish a foundation for the admission of two court documents reflecting that Quinn had pled guilty to, and was convicted of, two prior offenses of Domestic Violence. The trial court did not abuse its discretion in allowing the evidence of Quinn's two prior convictions for Domestic Violence.

{¶ 14} We also conclude that the State provided adequate notice of its intent to use the prior convictions as evidence based on the language of the indictment. Both Count I and Count 5 of the indictment charge Quinn with the offense of Domestic Violence, stating that "that offender having been previously convicted of Domestic Violence in the Clark County Municipal Court Case Numbers 00CRB305 and 12 CRB3737, in violation of Section 2919.25(A) of the Revised Code." "The purposes of an indictment are to give an accused adequate notice of the charge, and enable an accused to protect himself or herself from any future prosecutions for the same incident." *State v. Pepka,* 125 Ohio St.3d 124, 2010-Ohio-1045, 926 N.E.2d 611, ¶ 20, quoting

*State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, ¶ 7. The indictment charging Quinn with a third-degree felony for Domestic Violence put him on notice that the State would be presenting evidence of his prior convictions for Domestic Violence.

{¶ 15} Quinn's First Assignment of Error is overruled.

### IV. The Trial Court Gave an Appropriate Limiting Instruction

{¶ 16} Quinn's Second Assignment of Error states as follows:

THE TRIAL COURT ERRED IN NOT PROVIDING LIMITING INSTRUCTIONS AT THE TIME THE OTHER ACTS WERE TENDERED OR TO GIVE CORRECT LIMITING INSTRUCTIONS AT THE CONCLUSION OF THE TRIAL THAT WERE CONSISTENT WITH THE SAME OR SIMILAR ACT STATUTE, R.C. 2945.59

{¶ 17} We acknowledge that when evidence of prior convictions is admitted into evidence for a jury's consideration, the trial court must give the jury a limiting instruction to avoid misleading the jury as to the purpose of the evidence. OJI-CR 401.25 ¶ 4 of the Ohio Jury Instructions suggests this limiting instruction for evidence of prior convictions of the defendant:

4. USE OF PRIOR CONVICTION ENHANCING THE DEGREE OF OFFENSE. Evidence was received that the defendant was convicted of (describe prior conviction). That evidence was received because a prior conviction is an element of the offense charged. It was not received, and you may not consider it, to prove the character of the defendant in order to

show that he acted in (conformity) (accordance) with that character.

{¶ 18} The record reveals that the trial court did give a limiting instruction, after the close of evidence, prior to deliberations, but not at the time the evidence was presented through the testimony of the clerk's office supervisor.   In its final jury instructions, the trial court stated:

Evidence of prior convictions. This evidence was admitted but only for a very limited purpose. If you find that the defendant does not have prior convictions for domestic violence, you are to disregard that evidence. If you find that he does have prior convictions for domestic violence, that finding serves to enhance the degree of the domestic violence offense. Two points about that: Number one, you are required to make a finding one way. If you find the defendant guilty of a domestic violence, you are required to further deliberate and make a finding as to whether or not the defendant does have a prior conviction or prior convictions for domestic violence. While you are required to make that finding, I want to inform you that you are not to consider the subject of punishment. As I indicated to you earlier, your duty is confined to the determination of whether the defendant is guilty or not guilty.

A second comment about the evidence of prior convictions: There is a forbidden inference. Specifically, you may not consider that evidence to show that character of the defendant in order to find that he acted in conformity with that character in this case. In other words, you are to make a finding; if you find the defendant guilty of domestic violence, you are to

make a finding as to whether or not the defendant does or does not have prior convictions, that's the extent. It should be the extent of your deliberations on that matter. The prior convictions should be considered for no other purpose.

{¶ 19} We conclude that the court's limiting instructions were sufficient to advise the jury of the proper purpose of the evidence of the prior convictions and to warn that they should not be considered for any other purpose. We note that defense counsel did not object, during trial, to the witness's testimony or the admission of the documents proving the prior convictions, and made no request for a limiting instruction at the time the evidence was admitted. Therefore, whether the court erred in failing to give a limiting instruction during the trial may only be reviewed for plain error. Errors not preserved on the record below are forfeited, and are not subject to review on appeal, unless they constitute plain error. *State v. Fuller*, 2d Dist. Montgomery No. 24598, 2012-Ohio-1979, ¶ 56, citing *State v. Long*, 53 Ohio St. 2d 91, 95-96, 372 N.E. 2d 804 (1978). As we explained in *State v. Byrd*, 2d Dist. Montgomery No. 25842, 2014-Ohio-2553, ¶ 27:

> Plain error may be noticed if a manifest injustice is demonstrated. Crim.R. 52(B); *State v. Lewis,* 2d Dist. Montgomery No. 23850, 2011–Ohio–1411, ¶ 54. In order to find a manifest miscarriage of justice, it must appear from the record as a whole that but for the error, the outcome of the trial clearly would have been otherwise. *Id.,* citing *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978).

{¶ 20} Quinn's reliance on *State v. Lewis,* 66 Ohio App. 3d 37, 583 N.E. 2d 404 (2d Dist. 1990), is misplaced. In *Lewis*, the trial court gave no limiting instruction during

the trial and at the end of the trial, the general instructions also failed to inform the jury that the other acts evidence was not to be used as substantive evidence that the defendant committed the charged offense. *Id.* at 43. This is not a case where the limiting instruction was defective. This is not a case where no limiting instruction was given. *See, e.g., State v. Crafton*, 15 Ohio App. 2d 160, 239 N.E. 2d 571 (5th Dist. 1968). In the case before us, we conclude that the outcome of the trial would not clearly have been otherwise if a limiting instruction had been given during the trial.   The instruction at the end of the trial properly advised the jury of the limited purpose of the prior convictions.

{¶ 21} Quinn's Second Assignment of Error is Overruled.

## V. Trial Court Did Not Deny Quinn an Opportunity to Cross-Examine the Victim About Other Acts

{¶ 22}   For his Third Assignment of Error, Quinn asserts:

THE DEFENDANT WAS DENIED HIS RIGHT TO CONFRONTATION AND CROSS EXAMINATION WHEN THE TRIAL COURT DID NOT ALLOW THE DEFENDANT TO CROSS EXAMINE THE VICTIM ABOUT OTHER ACTS EVIDENCE THE STATE ELICITED.

{¶ 23}   Quinn argues that he should have been allowed to ask the victim, on cross-examination, questions about his prior Domestic Violence convictions. The record reveals that during the State's questioning of Beverly, she admitted that she knew Quinn had a prior conviction for Domestic Violence, because she was the victim of that offense. On re-cross, defense counsel asked Beverly if her other son had influenced her to file the previous charges for Domestic Violence, to which the victim responded, "Jim threatened

to kill me," which was not responsive to the question asked. The State then objected, "We are getting into the facts of the prior conviction." After the trial court sustained the objection, defense counsel did not ask any other questions of the witness, and did not proffer any evidence. We conclude that this record falls short of establishing that Quinn was precluded from pursuing the subject of the victim's decision to press charges in the prior case on cross-examination.

{¶ 24} "The strategic decision not to cross-examine witnesses is firmly committed to trial counsel's judgment." *State v. Abernathy*, 5th Dist. Stark No. 2014CA00120, 2015-Ohio-1363, ¶ 19, citing *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). Quinn does not show how his counsel's decision not to cross-examine on his prior convictions was unreasonable, especially in light of the danger of prejudice that could result by prolonging the witness's discussion of Quinn's guilty pleas to prior acts of Domestic Violence.

{¶ 25} We conclude that Quinn has not shown a substantial likelihood that the outcome of the trial would have been different if the objection to the victim's non-responsive answer on cross-examination (which was prejudicial to him), had been overruled. Quinn's Third Assignment of Error is overruled.

## VI. The Trial Court Is Not Responsible for Providing Discovery

{¶ 26} For his Fourth Assignment of Error, Quinn asserts:

THE TRIAL COURT ABUSED ITS DISCRETION IN NOT INFORMING THE DEFENSE IN RELATION TO THE VICTIM'S CREDIBILITY.

{¶ 27} Quinn alleges that the trial court had an obligation to inform the defense that "the victim might change her testimony as she has done in the past." This quotation refers to a statement made by the trial court in its decision overruling Quinn's post-trial motion for a new trial. Quinn speculates that the trial court is referring to statements made by the victim at a revocation of bond hearing that occurred in connection with the first indictment for Domestic Violence. Quinn does not provide any citation of authority for the proposition that the trial court has an obligation to notify the defense of the victim's prior testimony. The record does contain a transcript of the revocation hearing, which confirms that Quinn was present at the hearing with his counsel. The transcript includes the testimony of Quinn's mother, which supported Quinn's position that he had not violated the no-contact order, which was a condition of his bond. At the conclusion of the hearing, the trial court overruled the motion to revoke bond because there was no evidence of contact with the victim.

{¶ 28} It is well established that the State "has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 8, citing *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), and *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Crim. R. 16 governs discovery in criminal cases and only applies to the defense and the prosecution, not to the trial court. Even if Quinn had worded his Fourth Assignment of Error as the State's error in failing to provide discovery, we still find no violation of Crim R. 16.

{¶ 29} Crim. R. 16 (B)(7) does specifically require the prosecuting attorney to

provide to counsel for the defense, "any written or recorded statement by a witness in the state's case-in-chief," which would include statements of the victim. There is no record to support his assertion that he requested a copy of the transcript, was not given a copy of the transcript, or objected to the failure of the prosecutor to provide a transcript. In light of the fact that Quinn was present when the victim's statements were made at the bond revocation hearing, we find no prejudice that would have materially affected the outcome of the trial.

**{¶ 30}** Quinn's Fourth Assignment of Error is Overruled.


### VII. The Record Does Not Support Prosecutorial Misconduct

**{¶ 31}** For his Fifth Assignment of Error, Quinn alleges:

THE PROSECUTOR VIOLATED THE RULES OF DISCOVERY BY ALLOWING FALSE AND MISLEADING TESTIMONY TO GO UNCORRECTED.

**{¶ 32}** Quinn alleges prosecutorial misconduct on four grounds. First, Quinn alleges that the State had impounded the car that Quinn was driving at the time of the offense, but it was neither used as evidence nor disclosed to the defense. Second, Quinn alleges that the State did not disclose the medical records from Beverly's ER visit, and a police report that disclosed that Beverly was not wearing her glasses or hearing aid at the time of the offenses, which would have provided grounds to challenge her credibility at trial. Third, Quinn argues that the State had an obligation to recognize that the victim testimony's at the bond revocation hearing conflicted with her testimony at trial regarding whether she had contact with Quinn between the time the no-contact order was issued

in October and the date of the bond-revocation hearing in November. Quinn argues that based on this history of conflicting testimony, the State should not have stated in closing arguments that Beverly was a credible witness who told a credible story in a credible fashion. Quinn also argues that the photos entered into evidence by the State were used to inflame the sympathies of the jury and that the State failed to correct misleading testimony regarding the injuries on Beverly's arms, as depicted in the photos, because these injuries were actually caused by dog bites.

{¶ 33} "[T]he touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed. 2d 78 (1982). Additionally, the Supreme Court of Ohio has held that prosecutorial misconduct is not reversible error unless it deprives the defendant of a fair trial. *State v. Maurer,* 15 Ohio St. 3d 239, 266, 473 N.E. 2d 768 (1984).

{¶ 34} Initially, we note that Quinn did not raise claims of prosecutorial misconduct in the trial court. However, at the time the photos were introduced by the State, the defense did ask for a sidebar conference, and argued that some of the photos were more prejudicial than probative of the victim's actual injuries. The objection was overruled and the witness did authenticate the photos as accurate depictions of her injuries a few days after Quinn hit her. We find no abuse of discretion in admission of the photos, which accurately depicted the extent of the victim's injuries. The other three claims of prosecutorial misconduct may only be reviewed for plain error. Upon this record, we find no clear miscarriage of justice to the extent that if the alleged errors had not occurred, the result of the trial would have been otherwise.

**{¶ 35}** Quinn's Fifth Assignment of Error is overruled.

## VIII. Quinn Was Not Denied Effective Assistance of Counsel

**{¶ 36}** For his Sixth Assignment of Error, Quinn alleges:

QUINN WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY UNDER THE FIFTH AND SIXTH AND FOURTEEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1 SECTION 10 OF THE OHIO CONSTITUTION.

**{¶ 37}** Ineffective assistance of counsel allegations are reviewed de novo to determine if the counsel's deficient performance prejudiced the outcome. To reverse a decision based on ineffective assistance, the record must support a finding that defense counsel's performance was deficient, and that a reasonable probability exists that, but for counsel's omissions, the outcome of the trial would have been different. *State v. Jones*, 1st Dist. Hamilton No.C-130359, 2014-Ohio-3110, ¶ 27, citing *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus

**{¶ 38}** Quinn alleges that he was not provided with effective assistance of counsel for several reasons. First, he argues that his counsel failed to object to hearsay testimony elicited from numerous witnesses to bolster the credibility of the victim, in violation of Evid. R. 801 and Evid. R. 403(A). Quinn also alleges that defense counsel was ineffective when he failed to file pre-trial motions to exclude the testimony of the victim, based on her lack of reliability, and a pre-trial motion to exclude the photos as unfairly prejudicial. Quinn

also alleges that counsel was ineffective by failing to seek discovery concerning the vehicle and by failing to seek a continuance of the trial to complete discovery regarding the vehicle, in order to determine its exculpatory value. Quinn further alleges that defense counsel failed to seek or obtain discovery of the police report referenced in the hospital records regarding Beverly's emergency room treatment on the night of the offenses. Quinn also claims that defense counsel failed to interview the Walmart employee, whose testimony could have supported an alternative-suspect defense, because he was unable to identify Quinn as the person he saw and spoke to in the parking lot. Quinn also points out several deficiencies in defense counsel's cross-examination of the victim that could have better developed her lack of credibility and an alternative cause of her injuries.

{¶ 39} Initially, we note that Quinn has failed to support his arguments with facts established in the record. The record does not contain any factual support for the impoundment of any car, or the destruction of a car prior to trial. The record does not establish what discovery was sought by the defense, or what discovery was supplied by the State. The record does not establish whether defense counsel conducted a pre-trial interview of the Walmart employee. Without a record to establish these facts, the alleged errors are not preserved for appellate review.

{¶ 40} With regard to the alleged errors committed during the trial, our review of the record confirms that defense counsel did not object to the hearsay testimony of the officers, the medical professionals, and the Walmart employee who spoke with the victim on the evening of the offenses. However, we agree that the testimony of each of these witnesses, which confirmed who the victim identified as her attacker, and that the victim

was oriented and articulate, was admissible as an excited utterance or present-sense impression, which are permitted as exceptions to the rule against hearsay. An excited utterance is an exception to the hearsay rule under Evid. R. 803(2) as a statement or declaration made under stress, in reaction to a startling event, and not the product of reflective thought. *State v. Taylor*, 66 Ohio St.3d 295, 612 N.E.2d 316 (1993). The Supreme Court of Ohio has acknowledged that "[r]eactive excited statements are considered more trustworthy than hearsay generally on the dual grounds that, first, the stimulus renders the declarant incapable of fabrication and, second, the impression on the declarant's memory at the time of the statement is still fresh and intense." *Id.* at 300. Beverly's mental, emotional, and physical condition at the time she made statements to the officers and medical professionals was properly admissible under Evid. R. 803(3), as present-sense impressions. Therefore, we find no merit to Quinn's claim that defense counsel was ineffective by his failure to object to admissible testimony.

{¶ 41} We also conclude that defense counsel was not ineffective when he chose not to file pre-trial motions to exclude the testimony of the victim or to exclude the photos of her injuries. As discussed above, the photos were admissible, and a pre-trial motion to exclude them would not have changed their admissibility. A pre-trial motion to exclude the testimony of the victim based on a lack of credibility would have also been futile. Questions of credibility go to the weight, and not the admissibility of relevant testimony. The victim's testimony was relevant, and any challenge to her credibility was available to the defense in the opportunity to cross-examine her.

{¶ 42} Our review of the record does not support Quinn's claim that his counsel conducted an insufficient cross-examination of the victim to draw out her lack of

credibility. Defense counsel did raise the inconsistencies in her testimony at trial from her testimony at the bond-revocation hearing, and suggested in closing arguments that this inconsistency should be utilized to judge her credibility. Even assuming that defense counsel was ineffective by failing to cross-examine the victim on the issue of the dog bites on her arms, or her lack of glasses and a hearing aid on the night of the offenses, we cannot say that a more thorough cross-examination would have had a substantial likelihood of a different outcome of the trial. As discussed above, the admissible testimony of many other witnesses supported the fact that the victim was oriented and articulate about her injuries and the identity of her attacker near the time the offenses were committed. Based on all the evidence presented at trial, we conclude that counsel's performance did not create a reasonable probability that a different outcome would have resulted from a more effective cross-examination.

{¶ 43} Quinn's Sixth Assignment of Error is overruled.

**IX. The Findings the Trial Court Made for the Imposition of Consecutive Sentences Are Not Clearly and Convincingly Unsupported by the Record**

{¶ 44} For his Seventh Assignment of Error, Quinn asserts:

THE TRIAL COURT ERRED IN SENTENCING QUINN TO CONSECUTIVE SENTENCES BY FAILING TO MAKE REQUIRED FINDINGS.

{¶ 45} R.C. 2929.14(C)(4) allows a trial court to impose consecutive sentences based on three findings: First, that the "consecutive service is necessary to protect the public from future crime or to punish the offender; " second, that "consecutive sentences

are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and third, that one of the findings described in R.C. 2929.14(C)(4)(a), (b) or (c) is present, including that "the offender committed one or more of the multiple offenses while the offender was awaiting trial" on another offense, "at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct," or the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 46} Our review of a consecutive-sentence issue is governed by R.C. 2953.08(G)(2), which requires an appellate court to review the entire record to determine if the sentence is contrary to law, and to evaluate whether the record clearly and convincingly does not support the statutory findings required to impose consecutive sentences. If the "reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *State v. Bonnell,* 140 Ohio St. 3d 209, 2014-Ohio-3177, 16 N.E. 3d 659, ¶ 29.

{¶ 47} Initially, we note that without a PSI, the record does not contain a full history of Quinn's past criminal conduct, other than the two previous convictions for domestic violence which were proven at trial. At the sentencing hearing, the trial court identified all of the factors required by R.C. 2929.14(C), including findings that consecutive sentences are necessary to protect the public from future crime and to punish

the defendant, are not disproportionate to the seriousness of the defendant's conduct and to the danger the defendant poses to the public, are necessary to protect the public from future crime by the defendant given the defendant's history of criminal conduct, at least two of the multiple offenses were committed as a course of conduct and the harm caused by the offenses so committed is so great or unusual that no single prison term adequately reflects the seriousness of the defendant's conduct, and that defendant committed one or more offenses while he was under indictment awaiting trial. We conclude that the trial court engaged in the correct analysis, and that the record contains evidence to support the trial court's findings.

{¶ 48} Quinn's Seventh Assignment of Error is overruled.


## X. The Convictions Are Supported by Sufficient Evidence and Are Not Against the Manifest Weight of the Evidence

{¶ 49} Quinn's Eighth Assignment of Error asserts as follows:

MR. QUINN'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 50} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, at ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, "the relevant inquiry is whether any rational finder of

fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997), citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

**{¶ 51}** "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Lane*, 2d Dist. Greene No. 2008 CA 98, 2010-Ohio-287, ¶17, quoting *Wilson, supra,* at ¶ 12. "When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541 (1997).

**{¶ 52}** To find Quinn guilty of Domestic Violence the trier of fact would have to find beyond a reasonable doubt that he knowingly caused or attempted to cause physical harm to a family or household member. R.C. 2919.25(A). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." "Family or household member" includes "a parent," as that term is defined by R.C. 2919.25(F)(1)(a)(ii). Based on Beverly's testimony, which was consistent with the statements she made to others on the evening of the incident, the record supports a

conclusion that the jury had sufficient evidence to convict Quinn of two counts of Domestic Violence. The jury also had sufficient evidence to make the additional finding that Quinn had previously been convicted of Domestic Violence, which enhanced the offense to a third-degree felony.

{¶ 53} To find Quinn guilty of Kidnapping in violation of R.C. 2905.01(A)(2) , the State had to prove, beyond a reasonable doubt, that Quinn by force, threat or deception removed Beverly from her home for the purpose of facilitating a felony or flight thereafter. In the second count of Kidnapping, to find Quinn guilty of Kidnapping in violation of R.C. 2905.01(A)(3), the State had to prove, beyond a reasonable doubt that Quinn removed Beverly from her home for the purpose of terrorizing or inflicting serious physical harm on Beverly. Based on Beverly's testimony, which was consistent with the statements she made to others on the evening of the incident, the record supports a conclusion that the jury had sufficient evidence to convict Quinn of two counts of Kidnapping.

{¶ 54} To find Quinn guilty of Abduction, in violation of R.C. 2905.02(A)(2), the State had to prove beyond a reasonable doubt that Quinn knowingly, by force or threat, restrained Beverly's liberty under circumstances that created a risk of physical harm or placed her in fear of harm. Based on Beverly's testimony, which was consistent with the statements she made to others on the evening of the incident, the record supports a conclusion that the jury had sufficient evidence to convict Quinn of Abduction.

{¶ 55} To find Quinn guilty of Intimidation, in violation of R.C 2921.04(B)(1), the State had to prove beyond a reasonable doubt that Quinn knowingly and by force or unlawful threat of harm, attempted to influence, intimidate or hinder Beverly from filing criminal charges against him. Based on Beverly's testimony, which was consistent with

the statements she made to others on the evening of the incident, the record supports a conclusion that the jury had sufficient evidence to convict Quinn of Intimidation.

{¶ 56}   Examining the evidence presented for each of the offenses to determine if any are against the manifest weight of the evidence does not result in any different conclusions. We agree that the credibility of the victim was at issue, but based on the totality of the evidence properly admitted, reasonable inferences could be drawn to conclude that her story was credible. The record does not support that the jury lost its way or that a manifest miscarriage of justice occurred.

{¶ 57} Quinn's Eighth Assignment of Error is overruled.

## XI. The Trial Court Did Not Err by Refusing to Merge the Offenses of Intimidation and Domestic Violence

{¶ 58}   For his Ninth Assignment of Error, Quinn asserts as follows:

THE TRIAL COURT ERRED IN NOT FINDING THE CHARGES OF DOMESTIC VIOLENCE AND INTIMIDATION TO BE ALLIED CHARGES OF SIMILAR IMPORT SUBJECT TO MERGER.

{¶ 59}   At the sentencing hearing, the trial court denied the defense request to merge the Kidnapping and the Intimidation convictions, or the Domestic Violence and Intimidation convictions because all of these offenses were committed as one course of conduct. The trial court rejected the argument that both were committed by the same conduct.   A de novo standard of review is applied when reviewing an alleged error regarding a merger determination, *State v. Williams*, 134 Ohio St. 3d 482, 2012-Ohio-5699, 983 N.E. 2d 1245.

{¶ 60} R.C. 2941.25, Ohio's allied offense statute, provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 61} "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, syllabus. The Supreme Court of Ohio explained:

* * * [T]he question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same

conduct, i.e., "a single act, committed with a single state of mind." * * *

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge. (Citations and quotations omitted.)

*Johnson* at ¶ 48–51.

**{¶ 62}** As we recently stated in *State v. McGail*, 2d Dist. Miami No. 2014-CA-27, 2015-Ohio-5384, at ¶s 50 and 51:

More recently, the Ohio Supreme Court held that two or more offenses are of dissimilar import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 23. Therefore, offenses do not merge and a defendant may be convicted and sentenced for multiple offenses if any of the following are true: "(1) the offenses are dissimilar in import or significance * * *, (2) the offenses were committed separately, [or] (3) the offenses were committed with separate animus or motivation." *Id.* at ¶ 25. This analysis "may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct—an inherently subjective

determination." *Id.* at ¶ 32, citing *Johnson* at ¶ 52.

Most recently, the Ohio Supreme Court addressed the allied-offense issue again in *State v. Earley*, Slip Opinion No. 2015-Ohio-4615. There the majority characterized the analysis in its earlier *Johnson* lead opinion as "largely obsolete." *Id.* at ¶ 11. The *Earley* court instead embraced *Ruff*, which, as noted above, considers a defendant's *conduct*, his *animus*, and the *import* or significance of his offenses. Applying *Ruff*, the *Earley* court concluded that misdemeanor OVI and felony aggravated vehicular assault "are offenses of dissimilar import and significance that are to be punished cumulatively." *Earley* at ¶ 20. For purposes of our analysis here, we note that a defendant bears the burden of establishing entitlement to merger, and we review a trial court's ruling on the issue de novo. *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 15.

{¶ 63} "The Supreme Court of Ohio has interpreted the term 'animus' to mean 'purpose or, more properly, immediate motive.'" *State v. Thomas*, 2d Dist. Darke No. 2013-CA-11, 2014-Ohio-2666, ¶ 15, quoting *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979).

{¶ 64} Quinn argues that the Intimidation conviction should have merged with the Domestic Violence conviction because both offenses were committed with the same conduct and the same animus. The convictions for Domestic Violence were based on two separate acts of violence that occurred hours apart, one in the victim's home and one in the car, so they were not done at the same time or as part of a continuous course of conduct. The facts underlying the Intimidation conviction relate to the statement Quinn

made to his mother that he would not hurt her, or force her to jump off a bridge, if she did not report him to the police. The animus for the acts of Domestic Violence were to cause physical harm. The animus for the act of Intimidation was to avoid prosecution for his crimes. Consequently, Quinn has not met his burden of establishing that merger was required, because the offenses were committed with separate conduct and with a separate animus.

{¶ 65} Upon our review of the record, we conclude that the trial court did not err when it failed to merge the offenses or failed to find that the offenses were committed with the same conduct or with the same animus. Therefore, Quinn's Ninth Assignment of Error is overruled.

## XII. Conclusion

{¶ 66} All of Quinn's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Ryan A. Saunders
Lucas W. Wilder
Hon. Douglas M. Rastatter